## W. S. GODWIN CO. v. INTERNATIONAL STEEL TIE CO.

Circuit Court of Appeals, Sixth Circuit. December 10, 1928.

No. 5024.

Charles E. Brock, of Cleveland, Ohio (Hull, Brock & West, of Cleveland, Ohio, on the brief), for appellant.

Joseph B. Keenan, of Cleveland, Ohio, for appellee.

Before DENISON, MOORMAN, and HICKS, Circuit Judges.

DENISON, Circuit Judge. This is the second appearance of this case in this court. See 2 F.(2d) 198. The patent involved was there held to be valid, and the case was re-

manded for an accounting, if the District Court should think proper.

■ It was assumed in our opinion that the defendant had, in effect, paid plaintiff advance royalties which might be sufficient to cover any liability for damages or profits. This turned out to be an error. The advance payments had been made to Godwin individually, before the organization of the plaintiff company, and could not be offset, even if a liability for them as against some one were clear. Proof on the accounting seems sufficiently to show that plaintiff and defendant had entered into a contract by which the defendant would manufacture the patented article and the plaintiff would have the exclusive sale, receiving as its gross profits everything above the manufacturing cost, but sales being billed and collections being made by defendant,[1] and that the defendant broke this contract by selling through some other agents and at much less than plaintiff's price, and by charging plaintiff for manufacture a greater price than it was selling for to others. The master found, and the finding is not questioned, that defendant made no profits. Hence only damages are involved. When the master computed the price which defendant had charged plaintiff for the manufacture of the articles sold through plaintiff, and the selling prices which plaintiff had obtained, it appeared that plaintiff had realized a gross profit of $28 per ton. Plaintiff claims that, as it had a monopoly of the article under the patent, and no one could have lawfully bought anywhere else, then, under the applicable legal principles, all sales made by defendant to others must be held to have been plaintiff's lost sales, which it otherwise would have made, and that upon all of them it was entitled to this $28 per ton.

For the purpose of accounting, the infringement divides into three periods. The first is from the date of the patent until February, 1922, when the plaintiff, a Delaware corporation, was succeeded by a Maryland corporation of the same name. Whether the conveyance from the former to the latter, which referred to this patent, took effect to pass the title at its date or at a later period

when the purchase price had been paid, was in controversy. The master found that the title passed at the earlier date and so confined the accounting to the first period; this finding the District Judge confirmed, and there is no appeal. Hence so much of the testimony and controversy as related to the second period, intermediate this conveyance and the completion of the purchase price payment, and to the third period, after the title finally passed beyond question, is not before us for consideration. During the first period there is nothing in this appeal record to indicate that the arrangement of April, 1920, did not continue in full force.

■ The defendant cannot be heard to say that plaintiff had no means of supplying the demand, and so should be denied profits on lost sales because of doubt whether it could have filled the orders if they had come to it. The conclusion of the District Court to the contrary seems to have been based upon the situation existing after November, 1921, at which date defendant claims to have terminated all contract relations, and all infringing sales in this first period were made before November.

■ Where the patentee is able, as a manufacturer or dealer, to supply the entire demand for the patented article, it may commonly be inferred that the sales thereof which defendant makes would otherwise have come to the plaintiff, and so should be considered as sales lost to him through the infringement. Continuous, etc., Co. v. Schmertz Co. (C. C. A. 3) 219 F. 199, 206. The propriety of that inference is denied in this case because it is said that the demand which defendant filled was created only by defendant's advertising and soliciting efforts and expense. The proofs as to whether the plaintiff's efforts and the merits of the article had created the demand or whether there was none excepting that developed in a few instances by relatively disproportionate effort and expense, are too meager to justify any satisfactory consideration. For another reason, we are justified in leaving undecided the question whether the circumstances require an exception to the generality of the inference stated.

■ In order to make out a basis for computing damages on lost sales, plaintiff must show not only what its manufacturing cost and selling price would have been but what selling expense would have been involved. In many cases, there would be data from which these could be estimated well enough; but here the plaintiff makes no showing of any kind on the subject. It stands upon the

[1] After the patent issued, plaintiff's attorney solicited from defendant some form of a royalty contract, doubtless in substitution for all existing arrangements. Defendant declined, but on April 21st wrote a letter on substantially the basis above stated. While it is not in all respects definite, yet as the patent had issued, and defendant did not suggest a contest, and had no right to manufacture except by plaintiff's consent, our interpretation is justified. Apparently business continued under this contract until November, 1921; no other lawful basis appears.

theory that as it was maintaining and paying the cost of a selling organization, it would have received these additional orders without much additional expense. This also, in some cases, might be a satisfactory theory. Plaintiff failed and in effect refused to give any information as to its expense or its disbursements in advertising, soliciting or other costs of selling. Its whole organization seems to have consisted of Mr. Godwin and a stenographer.

As to the extent of their selling efforts there is no evidence, excepting the result. In the year 1920 plaintiff made twelve sales in seven different places. In the year 1921 it made six sales, all small and three of them trifling, in six places; practically none in either year, in Ohio or Indiana. Defendant's sales were, in 1920, eight, and in 1921, twenty, sixteen of which were in Ohio and Indiana. To the doubts suggested by these results must be added inferences from the nature of the article. It was a paving guard for the edge of the upper layer of a two-layer pavement, and took the place of the ordinary separate curbing. True, after this guard was specified by the engineer, the contractor must use it; but no engineer would specify it, unless he had first been persuaded that, balancing all elements of cost and efficiency of the whole pavement, this two-layer type should be adopted.

The advertising and promotion cost of this persuasion must be substantial. The defendant shows large expense on that score. We cannot escape the conclusion that plaintiff's theoretical profit would have been lessened, if not destroyed, by this factor, and hence that damages for lost sales are not sufficiently proved.

There is evidence of sales by defendant to customers which plaintiff had solicited, to which sales this conclusion might not apply; but they were not in this first accounting period.

The District Court, finding that the plaintiff failed in this way to show either profits or damages, but that defendant had taken the invention and ought to pay for it, adopted the theory of reasonable royalty and fixed the amount at 10 per cent. of defendant's selling price. This was done in a manner that is called arbitrary; but this court has done it in substantially the same way, in order to end litigation and in cases where, at best, there could be nothing but an estimate. Clark v. Schieble (C. C. A.) 248 F. 283; K. W. Ignition Co. v. Temco (C. C. A.) 283 F. 873; National Co. v. Mark (C. C. A.) 10 F.(2d) 430, 432. There is no

sufficient basis for revising the discretion of the District Judge in fixing the amount.

Plaintiff claims that it should have had treble damages, or increased damages, under the statute (U. S. C. S., §§ 9464, 9467 [35 USCA §§ 67, 70]), for wanton and willful infringement. Under ordinary conditions, the first finding of the District Court that the patent was invalid would furnish a sufficient answer to the claim; for a good faith contention that the patent is invalid is inconsistent with wanton infringement.

For a different reason, the infringement in this first period must be classed as deliberate and willful. Defendant was acting under the contract shown by the letter of April 20, 1920. During this first period defendant in no way questioned the scope or validity of the patent; seemingly, it was relying upon the patent in the conduct of its business. Certainly, except for the license, the infringement was willful and deliberate; but knowledge of it was withheld from plaintiff; indeed, a definitely false report was made. When, later, this suit was brought, defendant might have elected to justify under the license for the first period, thus admitting the license measure of liability, whatever it was. Defendant chose not to do this, but to repudiate the license, and to stand as a stranger from the beginning, in the hope of escaping liability entirely. Plaintiff acquiesced in the retroactive status thus claimed. It seems to us that defendant should not escape the consequences of its intentionally unlawful act only because it might have justified under the privilege which it deliberately, and for its supposed profit, abandoned.

Defendant's only suggested excuse for its conduct is that Godwin individually owed it money, and that it could thus offset against his debt to it whatever liability might accrue against it in favor of the plaintiff. This is to say that it could, by unlawful means, collect from the plaintiff a debt against somebody else. This is not a satisfactory justification.

We consider that the reasonable royalty found by the District Court should be doubled by the way of increased damages on account of this willful infringement. Obviously, after all contract relations and rights terminated, this conclusion would not be required; at least, not for the same reason which now justifies it.

The case is affirmed in all respects, excepting as to increased damages. Upon that subject, the decree is reversed, and the record remanded, for the entry of a new decree

pursuant hereto. The increase in damages will bear interest only from the date of the new decree.