**STANLEY–FAN–C–PACK SALES CO. v. FAN–C–PACK CO.**

**No. 192.**

Circuit Court of Appeals, Second Circuit.
Jan. 23, 1933.

Davisson & Manice, of New York City (Allen McCarty and Donald B. Riker, both of New York City, of counsel), for appellant.

A. Louis Oresman, of New York City (Edward C. Weinrib, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellant, an Ohio corporation, was organized by the appellee, a New York corporation, and the Stanley Manufacturing Company, an Ohio corporation, pursuant to an agreement dated January 28, 1929. The

contract obligated the Stanley Manufacturing Company and the appellee to organize a corporation under the laws of Ohio of shares without par value and the stated capital of $1,000, of which $500 was paid by each the Stanley Manufacturing Company and the Fan-C-Pak Company. The appellant employed a managing director at an annual salary, and he received one-third of the stock. There were five directors who, excepting the managing director, had association with the Stanley Manufacturing Company or the appellee. The Stanley Manufacturing Company agreed to contribute $6,750 monthly and the appellee $2,250 monthly, to be used by the appellant as a fund to pay (a) advances or commissions to salesmen; (b) administration expenses. If, at the end of the year, either of the contributing companies had paid more or less than its share, an adjustment was to be made. The appellant was to enter into contracts with the Stanley Manufacturing Company and the appellee, in substantially identical form, except as to commissions, agreeing to act as exclusive sales agent for each of the companies for the lines of merchandise mentioned in the agreement from the date thereof to January 1, 1930, "at no cost to any of the parties hereto, except the expenses as detailed in the preceding paragraph." If the managing director severed his connection with the appellant, he was to return to the corporation the capital stock set aside for him.

On March 30, 1929, a supplemental agreement was entered into between the Stanley Manufacturing Company and the appellee referring to the original agreement and reciting that "the Parties to that Agreement did not therein provide for a definite and final determination and adjustment of their rights thereunder." It further provided that the appellant should charge to each company directly the commissions earned by the salesmen on sales of its merchandise, overdrafts of salesmen, exclusive of selling its goods, a proportionate share of the administration expenses based upon the percentage that its total volume of business bore to the total volume of business of the appellant corporation, the volume of business of appellee to include, however, only one-half of the sales of its line of playing cards. The appellant was to charge to each corporation the proportionate share of the overdrafts of salesmen based upon the percentage set forth, and all moneys received by the appellant were to be handled and adjusted in accordance with these provisions.

The company was organized, its stock was issued, a managing director was employed, the business of both companies was carried on actively, and monthly installments were received as provided until there was a default in the payment by the Stanley Manufacturing Company of $31,409.08 and an admitted default by the appellee of $12,337.81.

The complaint alleges the making of the agreements as referred to, the organization off the company, and a demand for a money judgment, in excess of the $12,337.81 admitted to be due, to wit, $17,310.13, being the amounts above the contributions made for salesmen's commissions, their overdrafts, and administration expenses.

The answer, in substance, alleges that the managing director left the appellant's services, thus leaving the Stanley Manufacturing Company and the appellee the sole stockholders thereof, that each was entitled to half of the outstanding stock, and that the enterprise entered into, pursuant to the agreements, constituted a joint venture entitling each to an accounting when the operations ceased. The active operation of the corporation ceased on December 31, 1929. The answer alleged that the appellant had more than sufficient cash to pay debts and obligations and to pay the expenses of liquidating and dissolving the corporation. As an equitable defense, the appellee alleged that the Stanley Manufacturing Company had failed to pay the appellant the amount due from it, $31,409.08, and that therefore the appellee should not be forced to pay its indebtedness. It was alleged that no proceeding had been taken to compel the Stanley Manufacturing Company to pay, that the present action was instigated by the Stanley Manufacturing Company against the appellee to compel it to pay, and that, if the accounts of the joint venture were stated, the appellee would be entitled to receive more than the amount of $12,337.81 which it concededly owed. It was further alleged that the Stanley Manufacturing Company was not amenable to the process of the court. The appellee was therefore unable to have it made a party to the action or to have determined in this action the rights of the parties to the joint venture, to carry out which the appellant was organized, and the appellee pleaded that it would be inequitable to compel it to make its payment to the appellant when it was entitled to receive a larger sum if the Stanley Manufacturing Company paid.

After joining issue, a motion was made to strike out this alleged equitable defense which

the court (Woolsey, District Judge) denied, and thereupon entered an order transferring the case to the equity docket. Later the case was referred to a special master who sustained this equitable defense thus interposed, and found that the appellee was indebted to the appellant for $12,630.21 and the Stanley Manufacturing Company for $30,799.30; that a joint venture was created by the agreements and the appellee was entitled to receive a substantial sum after giving credit for the amount due from it; and he recommended the dismissal of the appellant's complaint. A decree was entered accordingly.

The theory of this defense seems to be that there was owing this substantial sum of money by the Stanley Manufacturing Company to the appellant and the above-stated amount from the appellee which, together with an unexpended balance of $955.51, made a total of $44,384.82, of which the appellee claims to be entitled to one-half or $22,192.41, and, deducting therefrom that sum ($12,630.-21) which the appellee conceded it owed, leaves a balance of $9,562.20 which it should receive. This even division is claimed upon the theory that the managing director's stock passed in equal portions to each of the other stockholders of the appellant. There was never any such transfer. The Stanley Manufacturing Company is not a party to this action.

■ The action involved a simple claim to pay money due under a contract adopted by appellant, and it could sue. Positype Corp. v. Mahin, 32 F.(2d) 202 (C. C. A. 2). The agreement plainly required the Stanley Manufacturing Company and the appellee to make their respective contributions to the appellant, a separate corporate entity. It was through that corporate medium that the profits, if any, were to be distributed to each in their capacity as stockholders. Now, when there are defaults and the appellee is called upon to make good its default in payment, it cannot insist it is dealing with the Stanley Manufacturing Company, as the real plaintiff. The indebtedness is due to the appellant, not to the Stanley Manufacturing Company. The Stanley Manufacturing Company's indebtedness was due in like manner to the appellant, not to the appellee.

■ But it is said that the officers of the Stanley Manufacturing Company are in control of the appellant corporation and may not sue to recover the amount due from it. If such be the case, there is a complete remedy by the appellee, as a stockholder, suing when those in charge of the corporation refuse or neglect to perform their duty.

■ The motion to dismiss this alleged equitable defense should have been granted. Appellant was entitled to a jury trial of the issue; the cause should not have been transferred to the equity calendar. If the agreement were construed to be a joint venture between the Stanley Manufacturing Company and the appellee, the suit to test the rights, equities and obligations of the parties would be a suit by those who made the contracts. The special master and the court below both have ignored the corporate entity of the appellant and have proceeded to adjust the accounts between the Stanley Manufacturing Company and the appellee without the Stanley Manufacturing Company being a party to the proceeding. This may not be done. Godwin Co. v. International Steel Co., 29 F.(2d) 476 (C. C. A. 6). The appellant was more than a mere shell; its control was in the hands of the board of directors elected by its stockholders. Without a trial to which the Stanley Manufacturing Company was a party, the court agreed with the appellee's contention that the Stanley Manufacturing Company was indebted upon a joint venture theory to the appellee, sustained the so-called equitable defense, ignored the corporate entity of the appellant, and the rights of the third stockholder were not considered. The Stanley Manufacturing Company, a corporation not appearing, was regarded as a party without having been served in the action.

Concededly the appellant was in business for profit—the agreement so provides. This corporate entity could not thus be cast aside. Appellee's invocation of the joint venture theory, and its claim that this action should be regarded as one of liquidation of a joint venture, was erroneous. Russell v. McLellan, 14 Pick. (Mass.) 63; Jackson v. Hooper, 76 N. J. Eq. 592, 75 A. 568, 27 L. R. A. (N. S.) 658.

The commission on sales as stipulated amounted to $25,932.29; the appellee was responsible for 36.8 per cent. of the administrative expenses amounting to $7,356.17; and of 36.8 per cent. overdrafts chargeable in proportion amounting to $2,583.50, overdrafts of Griffin & Wallace amounting to $2,728.39, making a total of $38,600.35, from which must be subtracted contributions paid of $23,-625, leaving a balance of $14,975.35. For this balance an action at law was maintainable.

Judgment reversed, and new trial ordered.