## BUCKSPAN v. HUDSON'S BAY CO.

Circuit Court of Appeals, Fifth Circuit.
November 30, 1927.

Rehearing Denied December 22, 1927.

No. 5139.

**Trade-marks and trade-names and unfair competition ☞73(1)—Hudson's Bay Company held entitled to injunction to restrain retail fur dealer from using name falsely indicating his connection with complainant.**

Complainant, Hudson's Bay Company, long known throughout the United States and other English-speaking countries as the largest dealer in raw furs in the world, and having a high reputation, though it sells no manufactured furs nor raw furs in the United States, but sells large quantities of raw furs to manufacturers in the United States, who sell the products to retailers throughout the country, including Dallas, Tex., *held* entitled to an injunction to restrain defendant, a retail dealer in manufactured furs in Dallas, from using the name "Hudson Bay Fur Company," or any other name calculated and intended to cause purchasers to falsely believe that he represents, or is connected with, complainant.

Appeal from the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Suit in equity by the Hudson's Bay Company against Abraham Buckspan. Decree for complainant, and defendant appeals. Affirmed.

W. M. Taylor, of Dallas, Tex. (Wallace & Taylor and W. L. Crawford, Jr., all of Dallas, Tex., on the brief), for appellant.

R. E. L. Saner and W. H. Jack, Jr., both of Dallas, Tex., and Harold S. Mackaye, of New York City, for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from a decree enjoining and restraining the appellant, Abraham Buckspan, his associates, agents, etc., from, in any way or manner, by shop signs, stationery, or advertising, conducting business under the name of the "Hudson Bay Fur Company," or the "Hudson Bay Fur Company of Texas, Independent," or any similar name calculated to deceive the public, and to create the impression that the appellant is in any manner identified or affiliated with the appellee. That decree was rendered in a suit in equity brought by the appellee against the appellant in October, 1926. As to the material facts the evidence, consisting of an agreed statement of facts and testimony of witnesses accompanied by exhibits referred to, was without substantial conflict. It disclosed the following:

The appellee, "the Governor and Company of Adventurers of England trading into Hudson's Bay," has been in existence since 1670 under a royal charter granted by the British King Charles II, and is commonly known and designated as the "Hudson's Bay Company." The agreed statement of facts contains the following:

"That plaintiff under the name of 'The Hudson's Bay Company,' during more than two centuries has been and is at present generally known, especially in Great Britain, Canada, the United States, and other English-speaking countries, as the greatest fur producing and trading establishment in the world. That plaintiff, operating under its said name, has acquired a reputation for reliable dealings, and is now possessed of a valuable good will commensurate with its recognized reputation for business integrity. That plaintiff has a general reputation and is known generally in the United States as a great trading company, trading in, among other goods, wares, and merchandise, raw furs.

"That plaintiff conducts periodical fur sales in London, England, which are attended by buyers from the United States, who purchase raw furs from plaintiff to the amount of many thousands of dollars per annum. That said furs so purchased are imported by said buyers into the United States, where same are manufactured into finished fur products, which are sold through the channels of trade by merchants and dealers not connected with plaintiff, to the public generally, in the United States and the large cities thereof, including Dallas, Tex.

"That plaintiff on, to wit, the 6th day of April, A. D. 1925, caused to be organized a corporation under the laws of the state of New York to do business as a subsidiary of plaintiff under the name of 'the Hudson's Bay Company' and plaintiff is preparing to do business in the United States through said subsidiary corporation. That plaintiff has not any place of business in the state of New York or in the United States in which it is now selling or has sold, either directly or through any subsidiary, any goods, wares, or merchandise in the United States.

"That notices and advertisements of plaintiff's periodical fur sales, which take place in London, England, appear in the 'Fur Trade Review,' a magazine published in New York City. That said magazine, containing said notices, is currently received in

Dallas, Tex., by dealers in manufactured furs.

"That blankets and tobaccos produced by the plaintiff, and labeled and known as products of plaintiff, the Hudson's Bay Company, are sold in the United States under plaintiff's own trade-mark. That tobaccos designated, known, and advertised as products of the plaintiff, are sold in Dallas, Tex., by retail mercantile stores, and have been sold in Dallas for many years. That the attached is a true copy of the advertising folder which is publicly distributed in Dallas.

"That the defendant, Abraham Buckspan, engaged in the mercantile business in the city of Dallas, Tex., at 1314 Elm street, in January, 1916, at which place he has subsequently been continuously engaged in the mercantile business at said location. That a substantial number of persons in Dallas, Tex., the exact, or approximate number of which is unknown, have purchased manufactured furs, and fur garments from defendant at his place of business in Dallas, Tex., under the impression and belief that they were making such purchases from plaintiff, or from a branch or subsidiary of plaintiff. That said persons, not knowing that there was no connection between plaintiff and defendant, and not knowing the exact nature of the business of each, received such impression wholly from the similarity between the respective names of plaintiff and defendant.

"That neither at the time defendant, Abraham Buckspan, in 1916, began the operation of his store in Dallas, Tex., under the name of 'Hudson Bay Fur Company' nor at any time subsequent thereto, has defendant's business in fact been a branch or subsidiary concern of plaintiff. * * *

"That plaintiff conducts its fur-selling business by buying furs directly from the trapper and selling same directly to the manufacturers. That plaintiff sells raw furs only, and sells same at auction sales conducted by it in the city of London, England. That said furs are sold without manufacturing the same into fur garments. That plaintiff has no customers in the city of Dallas, and does not advertise its auction sales in any periodical published in the city of Dallas. There are no importers in the city of Dallas, dealing in raw furs.

"That the mercantile business of defendant during all of said period and now has been and is restricted to the purchase and sale of finished or manufactured skins and fur garments only, and that defendant has at no time engaged in buying and selling raw furs or skins, and has not held himself out as engaged in the sale thereof.

"That defendant, since he engaged in business in 1916 and continuously until now, has been engaged in the retail business only, and has not at any time been engaged in the sale of merchandise by wholesale. That the trade territory of defendant lies wholly within the state of Texas, and is confined and limited to the retail trade territory of the city of Dallas and its retail trade vicinity.

"That the defendant in his present business enjoys a reputation for honest and reliable dealings, and has become possessed of a valuable good will. That on November 20, 1919, the defendant registered in the manner provided by the laws of Texas his trademark, on which appear the characters "Hud Fur Co.," which trade-mark defendant has used exclusively since the registration thereof, and is valuable to him, used in connection with the trade-name under which he transacts his business."

Since 1916 appellant conducted a business in Dallas, Tex., under the name Hudson Bay Fur Company. Long before he began business in Dallas he was engaged in the fur business, and knew of the Hudson's Bay Company, trading in the Hudson Bay region. The letter head used by appellant contains the statement "Furs directly from trapper to wearer." He testified to the effect that he sold no furs bought by him from trappers, except a small amount of Texas furs, and that most of the furs he sold were bought from manufacturers. During a period of nearly three years, beginning in December, 1923, there was correspondence between representatives of the appellee and the appellant and his representative in regard to the appellant making it clear, by suitable additions to his signs, stationery, and advertising matter that he was not connected in any way with the appellee or its business. The demands of the appellee in that regard were not complied with by the appellant, and he did not plainly disclose that he had no connection with appellee.

The evidence leaves no room for reasonable doubt that from the beginning appellant's use in his business in Dallas of the name "Hudson Bay Fur Company" was manifestly liable to deceive ordinary persons dealing with him into the belief that he represented or was connected with appellee, and that his furs were products of the appellee, which, under the name "Hudson's Bay Company," was generally known throughout the United States as a great fur producing and

trading company. In the absence of any plausible explanation of the appellant's adoption of a name so similar to that by which appellee was commonly known in Dallas, as elsewhere throughout the English-speaking part of the world, it may be inferred that the reason for so imitating appellee's name was to secure the advantages which would result from a supposed connection with a historically famous collector of and trader in furs. The facts of this case clearly distinguish it from cases presenting the question of the respective rights of two traders, who at the same time use the same trade-mark or trade-name in different territories separate and remote from each other, with the result that the mark or name means one thing in one territory and an entirely different thing in the other. Opinions dealing with such cases plainly indicate that the second adopter of a trade-mark or trade-name is not entitled to protection in the use of it, when his use thereof amounts to an attempt to sell his goods as those of the other user of the name or mark, or it appears that he selected the mark or name with a design inimical to the first user, such as to take the benefit of the reputation of his goods, to forestall the extension of his trade, or the like. United Drug Co. v. Rectanus, 248 U. S. 90, 101, 39 S. Ct. 48, 63 L. Ed. 141; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 415, 36 S. Ct. 357, 60 L. Ed. 713; Sweet Sixteen Co. v. Sweet "16" Shop (C. C. A.) 15 F.(2d) 920.

We are not of opinion that appellee's right to relief was affected by the fact that prior to the institution of the suit it had not been a wholesale or retail seller of furs in Dallas or elsewhere in the United States. It was enough to entitle the appellee to relief that its furs and other products marketed by it were known and dealt in in Dallas and throughout the United States, that the use by the appellant of a trade-name having a deceptive similarity to that of the appellee enabled the appellant to sell his furs as those of the appellee, thereby deceiving the public, and, at least in appellant's limited trade territory, making the maintenance of appellee's good name and good will and the reputation of its furs dependent to some extent upon appellant's conduct and financial responsibility and the quality of the furs sold by him. British-American Tobacco Co. v. British-American Cigar Stores Co. (C. C. A.) 211 F. 933, Ann. Cas. 1915B, 363; Aunt Jemima Mills Co. v. Rigney & Co. (C. C. A.) 247 F. 407, L. R. A. 1918C, 1039; Wall v. Rolls-Royce of America (C. C. A.) 4 F.(2d) 333.

We conclude that the record shows that the appellant had no semblance of right to continue to do what he was enjoined from doing, and that the decree appealed from is not properly subject to be reversed at his instance. That decree is affirmed.