## TERMINAL BARBER SHOPS, Inc., v. ZOBERG et al.

Circuit Court of Appeals, Second Circuit.
October 29, 1928.

No. 128.

Weill, Wolff & Satterlee, of New York City (Henry F. Wolff and Arthur L. Newman, II, both of New York City, of counsel), for plaintiff.

Warfield & Watson, of New York City (F. P. Warfield and Donald L. Brown, both of New York City, of counsel), for defendants.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The Terminal Barber Shops, Inc., a New York corporation, at the date of the commencement of this suit, maintained and operated a chain of barber shops and ladies' hair-dressing establishments under the name of "Terminal Barber Shops" and "Terminal Beauty Shops." This suit seeks to restrain the defendants from conducting their barber shops and ladies' hair-dressing establishments, using the name "Terminal Beauty Parlors," or other combinations including the word "Terminal." The plaintiff was organized in 1908, having its first three shops in the Hudson & Manhattan Railroad Terminal Buildings in New York City. It made part of its corporation and its trade-name, "Terminal," suggested by the name of the building of its first location. For 20 years it has continued to expand and grow and establish shops in railroad stations, large hotels, and office

buildings, using the word "Terminal" in all its window signs and advertising. In 1917 it opened its first separate ladies' hair-dressing establishment, and since then has developed an extensive business in this field. At all times it has used the word "Terminal." The business has grown so that, on the date of the commencement of this suit, it had 31 shops, and it had under lease additional space to make a total of 38 places of business. The gross business in 1927 was $2,400,000, of which $750,000 represented the proceeds from the ladies' hair-dressing business.

When the plaintiff commenced business, it organized to improve the barber business along more sanitary lines. It eliminated the then universal use of the shaving mug and a cake of soap, one brush, comb, and towel used by several customers. It provided for cleanliness of the barber and cleanliness toward the customer by a novel service of individual brush, comb, and towel. Other sanitary conditions within the shop were provided. This gained for the plaintiff a reputation which helped to establish and expand its business. Now its shops and salons are located in New York, Michigan, Illinois, and Ohio. The plaintiff advertised, using the name "Terminal," extensively in magazines and newspapers, not only in the city of New York, but elsewhere, and, during the past three years, has expended annually $75,000 for such purpose. It has no shops in New Jersey, where the defendants are located, but it advertises extensively in trains used by commuters of New Jersey; also in newspapers in that state. The affidavits establish that the plaintiff's reputation for "terminal service" has become such that there constantly come to it proposals unsolicited from important cities in the United States, and from owners of buildings, stores, and hotels, desiring to introduce its service in their enterprises. This results in the plaintiff's ability to secure advantageous leases, frequently without competition, and is said to be based upon the high reputation for the type of service rendered.

The defendants, copartners, on June 22, 1927, filed a certificate for doing business under the assumed name of "Terminal Beauty Parlors" in Hudson county, and on August 26, 1927, in Essex county, New Jersey, and in New York county, New York, on January 24, 1928. At the time of the commencement of this suit, they operated a place of business as the "Terminal Barber Shop" in Union City, N. J., "Terminal Beauty Parlors," Union City, N. J., "Terminal Beauty Parlors," in West New York, N. J., "Terminal Beauty Parlors," Jersey City, N. J., "Terminal Beauty Parlors," Newark, N. J., and "Terminal Beauty Parlors," New York City. All of these, except the shop at Union City, were opened after June, 1927. These places of business are located within a few miles of Jersey City, which is but across the Hudson river from the Hudson Terminal Building in New York City. The defendants advertised their place of business in New York, when it was opened about the end of March, 1928, at 3652 Broadway, New York City, as an uptown branch of the "Terminal Beauty Parlors."

In October, 1909, the defendant Lenneper opened a barber shop on the west side of Eighth avenue and 128th street, New York City, and in his affidavit swears that he conducted this business for 2 years as the "Terminal Barber Shop." In 1911 he moved to Hoboken, N. J., where he went to work for another barber for 1 year. Thereafter he established himself, using the name "Terminal Barber Shop," in Hoboken, N. J., but sold this shop and then worked in New York City for another for 3 years. In 1918 he opened a shop at Union Hill, N. J., and did business under the name of "Terminal Barber Shop" for 2½ years. In 1921 he sold out his business and in 1923 again embarked in business as the "Terminal Barber Shop" at Union Hill, N. J. He conducted this shop for about 2 years and was forced to vacate the premises because, as he says, of a leaky condition in the cellar. He opened across the street as the "Terminal Barber Shop," and in 1926 opened his first ladies' hair-dressing establishment as the "Terminal Beauty Parlor" at Union City, N. J. Thereafter in 1927 he became associated with Zoberg. In January, 1928, after the commencement of this suit, they formed a corporation and transferred to it the business of the copartnership, consisting of four beauty parlors and one barber shop in New Jersey. There is evidence of confusion in the trade, both of customers and sellers of barbers' supplies. When the defendants opened their shop in New York, some of the bills for construction work were sent to the plaintiff. The defendant Lenneper explains the original use of "Terminal" by saying that, when he opened his first New York shop, a plumber suggested the name because it was a term known in the plumbing business. This is contradicted by an affidavit of an experienced plumber.

■ The District Judge granted an injunction, but confined its restraining provisions to New York state, and denied the prayer for injunctive relief in the state of New Jersey.

As to New Jersey, it is apparent to us that the facts present the plaintiff and defendants competing under the same name in the same market. Newark is but 7 miles from Jersey City and Union Hill, and West New York 3 to 4 miles. A tunnel connects Jersey City with the Hudson Terminal Building, and the time of transportation is but 3 minutes. Jersey City, in time, is nearer to the plaintiff's downtown shops than Forty-second street, New York. The uptown terminal of the Hudson tubes is in close proximity to the establishment of the plaintiff at the Pennsylvania Hotel. New York City newspapers have a large circulation in New Jersey, and thus the plaintiff's advertisements are furnished to New Jersey patrons. New Jersey is a part of the New York retail market, and the geographical or state line in no way interferes with this conclusion. The plaintiff has carried on a continuous campaign of advertising, directed to the patronage of residents of New Jersey. The record establishes that the plaintiff has a very substantial business in New Jersey, both in its barber shops and ladies' hair-dressing establishments. Records were kept of women securing hair treatment, and from such records one-third of the customers of the ladies' hair-dressing establishments gave New Jersey as their residence. It is clearly shown that patrons come from all parts of New Jersey to the plaintiff's establishment. The defendants, carrying on their business in New Jersey in such close proximity to New York, using the name "Terminal," have come into sharp competition with the plaintiff, and are endeavoring to capture, not alone the plaintiff's established business, but the business promised to it by normal expansion. As stated, the defendant Lenneper several times ceased using the term "Terminal" when he closed his shop. The plaintiff has constantly extended the use of its name within the territory where the defendants are now carrying on business, and there was extensive knowledge of plaintiff's name and what it stood for in the matter of efficient service in the field where the defendants subsequently came to establish themselves. As a subsequent user of the name, endeavoring to take the benefit of the reputation of the plaintiff's goods in this way, or to forestall the extension of its trade, they committed an injury for which equity will afford injunctive relief, even though the trade-mark has not been registered under the statute. The defendants are unquestionably attempting to benefit by the reputation of the plaintiff.

In Hanover Star Milling Co. v. Metcalf,

240 U. S. 403, 416, 36 S. Ct. 357, 361 (60 L. Ed. 713), the Supreme Court said that "since it is the trade, and not the mark, that is to be protected, the trade-mark acknowledges no territorial boundaries of municipalities or states or nations, but extends to every market where the trader's goods have become known, and identified by his use of the mark," and further that, where two parties independently are employing the same mark upon goods of the same class, in separate markets, one wholly remote from the other, prior appropriation is immaterial, unless it appears that the second adopter has selected the mark with the same design inimical to the interest of the first user, so as to take the benefit of his reputation for his goods or to forestall the expansion of his trade. Whether the name of a corporation be recorded as a trade-mark or trade-name, or both, the law affords protection against its appropriation, where the general purpose thereof is to obtain a competitor's business, which he has established or which might be justly in the field of the expansion of his business. American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 70 L. Ed. 317.

In Sweet Sixteen Co. v. Sweet "16" Shop, Inc. (C. C. A.) 15 F.(2d) 920, the plaintiff had established its business for women's retail clothing under the name "Sweet Sixteen Co.," with shops in San Francisco, Los Angeles, Portland, and Seattle. The defendant incorporated under the laws of Utah and began planning the establishment of a store in Salt Lake City using a similar name "Sweet '16' Shop." The argument was there advanced that the defendant had started in a distant city, but the court held that although the plaintiff had no shop in Utah, it should be protected by injunction against the use by defendant of its name. In Buckspan v. Hudson Bay Co. (C. C. A.) 22 F.(2d) 721, an injunction was granted against the name of "Hudson Bay Fur Company" by a firm in Dallas, Tex., where the plaintiff had no place of business, and where the defendant was engaged in the sale of manufactured furs and fur garments, whereas the plaintiff, which had been in existence since 1670, had established a world business, with a valuable good will and having periodical sales in London, which were attended by buyers from the United States, and where the plaintiff dealt in raw furs. The defendant had been in business for more than 10 years, but the court held that the trade-name, having a deceptive similarity to that of the plaintiff, enabled the defendant to sell furs as those of the plaintiff, thereby deceiving the public. The plain-

tiff had no place of business in the United States, but had a market here. In the case under consideration, the plaintiff had no place of business in New Jersey, but had patrons and a good will established there. See, also, Rice & Hutchins v. Vera Shoe Co. (C. C. A.) 290 F. 124; Hub Clothing Co. v. Cohen, 270 Pa. 487, 113 A. 677; British-American Tobacco Co. v. British-American Cigar Stores Co. (C. C. A.) 211 F. 933, Ann. Cas. 1915B, 363.

United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141, relied upon by the court below in denying part of the relief asked, is distinguishable. The decision there was grounded upon the fact that the plaintiff's assignor had never, either by sales agency or by advertising, made any attempt to make her product or its name known outside of the New England States, and had never made any effort to extend her trade to Kentucky, where the defendant carried on a valuable trade under the name of "Rex" for many years, before the plaintiff first attempted, with full knowledge of the defendant's activities, to extend her business into that state.

■ It is argued that, because the defendants formed a New Jersey corporation in January, 1928, it is an indispensable party, and the plaintiff must proceed in the New Jersey courts to obtain relief against it. The defendants have turned over their business to the New Jersey corporation, and are its principal stockholders and officers. Some of the stock is not held in their name, but held for them. If they continued doing business as a corporation, they would be active in the unfair competition, and continue in the commission of wrong against the plaintiff. Their continuance as officers and interested stockholders in the new corporation makes them, for all practical purposes, the corporation, managing and controlling its affairs as if it were still a partnership. They may not pirate plaintiff's business in New York or New Jersey, using the word "Terminal," without being personally responsible. To permit it would be to allow the corporation to be a successful cover for interested individuals. General Electric Co. v. Alexander (C. C. A.) 280 F. 852; Saxlehner v. Eisner (C. C. A.) 147 F. 189; National Cash-Register Co. v. Leland (C. C. A.) 94 F. 502; Poppenhusen v. Falke, Fed. Cas. No. 11,279 (So. Dist. N. Y.).

■ "An executive officer of a corporation cannot shield himself behind an artificial and sometimes irresponsible creation from the consequences of his own acts, even though performed in the name of an artificial body.'" Hitchcock v. American Plate Glass Co. (C. C. A.) 259 F. 948. No relief is sought here against the New Jersey corporation and an injunction against the defendants only is asked. After 20 years of industry and erudition, and the expenditure of large sums of money, plaintiff has established an extensive and valuable good will, using the mark "Terminal" throughout this period of years. It has become so well defined and associated with the plaintiff's business that to permit another to use the word "Terminal" would be a serious and constant injury to the plaintiff's business, and must be prohibited. The harm done is irreparable, and the plaintiff must be protected in the time intervening between its application for a preliminary injunction and final hearing. The decree will be modified, so as to enjoin the defendants' use of the word "Terminal," alone or in combination with other words, as a trade-name under which they shall conduct their business in both New Jersey and New York.

Decree modified accordingly.