### HIRAM WALKER & SONS, Inc., v. PENN– MARYLAND CORPORATION.

No. 175.

Circuit Court of Appeals, Second Circuit.

Dec. 2, 1935.

Breed, Abbott & Morgan, of New York City (Hugh S. Williamson and Gerald J. Craugh, both of New York City, of counsel), for appellant.

Drury W. Cooper, Morris Henry Frank, and Robert S. Dunham, all of New York City, for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This is an appeal from an order granting a temporary injunction restraining the appellant's use of the word "Imperial" as a trade-mark for whisky. The order was based upon the infringement of a registered trade-mark for the word "Imperial" for appellee's product. The court below granted the injunction after issue was joined and upon affidavits. The appellant in selling its whisky has a brand name, "Penn-Maryland Imperial."

Appellee is a corporation, organized under the laws of the state of Michigan, in June, 1933, with a principal place of business at Peoria, Ill. Its claimed ownership of the word "Imperial," as a trade-mark, is by an assignment from Hiram Walker & Sons, Limited, a corporation of Ontario, Canada, under date of December 6, 1933. Hiram Walker & Sons, Ltd., claims ownership to the trade-mark in Canada as a successor of Hiram Walker & Sons. The allegations of the bill set forth claims of infringement and unfair competition. It is alleged that appellee and its predecessors have sold distilled whisky under the name "Imperial" since 1887, principally in Canada up to 1891, and since the latter year it has sold quantities in the United States. It is also alleged there were sales in large quantities and extensive advertising in the United States and that the purchasing public in the United States have come to identify the whisky to which this name is applied as that of the appellee.

In October, 1934, appellant placed on the market three new fine quality blends of different grades. As part of this plan it used words on the label and in its advertising with which to impress the public with the quality of the whiskys. They were "De Luxe," "Imperial," and "Regal," and referred to each as "Penn-Maryland De Luxe," "Penn-Maryland Imperial," and "Penn-Maryland Regal." The first named was the highest-priced, the second the medium, and the third the lowest-priced blend. The appellant asserts that at the time the word "Imperial" was selected as one of these brands, no one connected with it was aware of the appellee's use of the word "Imperial." The sales of appellee's brands in the United States, as shown by the figures which it submits, were comparatively small.

Appellee complained to the appellant about the use of the word "Imperial," and the appellant asserted that under the circumstances it was proper for it to use the word. Indeed, Henry H. Schufeldt & Co., like appellant, a subsidiary of the National Distillers Products Corporation, used "Imperial" as a trade-mark for gin continuously from 1868 to the date of Prohibition, antedating the appellee's first use even in Canada. Appellant's affiliate also used "Imperial Crown" for cherries and olives used in making cocktails. The record only shows sales by appellee of its brand in the United States, prior to Prohibition, to be 964 cases and 37 barrels for the year ending August 31, 1891; 1 case in March, 1896; 2 cases in August, 1902; 1 case in December, 1909; and 1 case in September, 1917. No sales could be made during the Prohibition period, but 5,210 cases of appellee's brand were sold here between the date of Repeal and October, 1934, when appellant put its brand on the market, and of these 4,964 cases were sold in the state of Michigan. The appellee sets forth the total, which was very large, of the sales of its brand in Canada and elsewhere, prior to Prohibition, but submits no figures, other than those above, as to sales in the United States.

The word "Imperial" is descriptive and indicative of quality. Webster's New International Dictionary defines it as "of superior or unusual size or excellence;

as imperial paper, imperial tea, etc." It is a generic word, adjective in its nature. It is commonly used as signifying imposing size, appearance, or excellence. 31 C. J. 255. Similarly, the same dictionary defines the word "De Luxe" as "made or devised with unusual elegance; unusually perfect in material, workmanship and finish; luxurious, sumptous." "Regal" is defined as "pertaining to, suitable to, characteristic of, or like a king; hence stately, splendid." In the selection and use of these three words, therefore, the appellant can fairly be said to have had in mind the idea of quality. "Imperial" being descriptive was incapable of being a valid trade-mark. In Beadleston & Woerz v. Cooke Brewing Co., 74 F. 229 (C. C. A. 7), the court declined to protect "Imperial" as applied to beer because it was a word indicative of quality. It said, at page 232 of 74 F.: "The record contains evidence of general use of the word in the sense of superior quality. Thus we find the markets flooded with 'Imperial Champagne,' 'Imperial Whisky,' 'Imperial Gin,' " etc. See, also, Dayton v. Imperial Sales & Parts Co., 195 Mich. 397, 402, 403, 161 N. W. 958.

Buckley, J., in Whitstable Oyster Co. v. Hayling Fisheries, 17 R. P. C. 461, 471, quoted in Hopkins on Trade Marks (4th Ed. 1924), said: "If you had anything which was a little above the average and you wanted to describe it, you called it an 'Imperial,' meaning that it was excellent."

In Royal Baking Powder Co. v. Sherrell, 93 N. Y. 331, 334, 45 Am. Rep. 229, the court, in denying validity to "Royal" as a trade-mark when used in connection with baking powder, quoted from Corwin v. Daly, 20 N. Y. Super. (7 Bosw.) 222, 233: "The words 'Royal,' 'Imperial' and 'Princely' are referred to as words denoting the quality of an article—as indicating its high degree of excellence."

Appellee, however, refers to Hughes v. Alfred H. Smith Co., 209 F. 37, 39 (C. C. A. 2), and McGraw Tire & Rubber Co. v. Griffith, 198 F. 566 (C. C. S. D. N. Y.). In the first case the plaintiff, having built up a trade through the defendant's grant to him of the exclusive right to sell in the United States brushes stamped with the word "Ideal"

in script, succeeded in enjoining the defendant from selling identical brushes stamped "Ideal." The court by way of dictum said: " 'Ideal' so applied to a brush is not descriptive." In the second case, the plaintiff, having sold to the defendant, among others, tires on which was molded "Imperial—Made by McGraw Tire & Rubber Co.," obtained an injunction against the competition caused by the defendant's sale of tires on which was molded "Imperial—Made by the General Tire & Rubber Co.," in obvious similarity to plaintiff's molding. Although the court said there was an infringement of the plaintiff's trade-mark "Imperial," the opinion merely assumed its validity; the question of its character as a descriptive word apparently not having been raised. In Crawford v. Shuttock, 13 Grant Ch. 149, the court, admitting hesitation and characterizing the case as not very strong, held "Imperial" as applied to soap was not descriptive but was a valid trade-mark.

An attempt is made to establish an estoppel against the appellant's contention that "Imperial" is not the subject of a trade-mark by its application to register "Penn-Maryland Imperial." Descriptive words may be included in a registration, the statutory ban merely running against trade-marks which consist only of such words. Beckwith's Estate, Inc., v. Comm'r of Patents, 252 U. S. 538, 40 S. Ct. 414, 64 L. Ed. 705. The appellant made it plain that it considered the word descriptive, and thus not the subject of exclusive rights, in its letter answering the appellee's protest, before the application for registration was made.

The reason for the invalidity of a generic word is that it lacks the quality of distinction which is the gist of a trade-mark. It is suggested that the question of whether a word is or is not capable of becoming distinctive of the goods of a particular maker is a question of fact and is not to be entirely determined by whether or not it is descriptive. This is recognized in the rule that a generic word may, through constant association, come to acquire a secondary significance denoting origin or ownership. American Medicinal Spirits Co. v. United Distillers, 76 F.(2d) 124 (C. C. A. 2); G. & C. Merriam Co. v. Saalfield, 198 F. 369 (C. C. A. 6). There is nothing here to in-

dicate that the appellants recognized the selling power of appellee's name and intentionally endeavored to capitalize on it as in American Medicinal Spirits Co. v. United Distillers, supra. Therefore, it was the appellee's burden to prove that "Imperial" and the certain whisky made by it had become synonymous to the buying public. Kellogg Toasted Corn Flake Co. v. Quaker Oats Co., 235 F. 657 (C. C. A. 6). This the appellee has failed to do. The claim that the public have come to associate the word "Imperial" exclusively with its product is founded merely upon the assurances of officers of the appellee unsupported by any details. The affidavits of three bartenders and the proprietor of a liquor business, that they always served Hiram Walker's Imperial when a customer sought "Imperial" whisky, fall far short of establishing that the association of ideas was the widespread, general custom necessary to establish even prima facie that "Imperial" had acquired a secondary meaning.

The appellee argues that during prohibition, the whisky in question was sold as "Imperial" in Canada and that visiting Americans became so familiar with it under this name that secondary meaning is established in the United States where the visitors now trade. The principle of the argument is valid enough, since the patrons and their good will may be in a place removed from the locale of the trader. Terminal Barber Shops v. Zoberg, 28 F.(2d) 807 (C. C. A. 2).

■ United Drug Co. v. Rectanus Co., 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141, and Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713, are not in conflict. The facts in those cases show that the second user of a mark already familiar in a different locality started when the mark was generally unknown in his territory. The place of the reputation is the protected territory wherever the trader is. Buckspan v. Hudson's Bay Co., 22 F.(2d) 721 (C. C. A. 5). But this argument does not help the appellee, for the proof at best establishes only some sales to American visitors in Canada. There is nothing to show that they retained any impression of the appellee's use of "Imperial" after their return.

Moreover, in 1898, Mida's Natio Register of Trade Marks listed eight brands containing the word "Imperial" and all used in connection with whisky. Four of these are stated to have been in use prior to the original adoption by appellee's predecessors. And in Watson v. Westlake, 12 Ont. Rep. 449, the plaintiff, manufacturing "Imperial" cough drops, was unable to restrain one who subsequently sold "Imperial" candy because it was shown that "Imperial" had been used to designate various kinds of candy before the establishment of plaintiff's alleged trade-mark. The word had become public property and no one could appropriate to his product the term by which the article had been previously defined.

■ Nor is there any element of unfair competition to support the injunction granted. The advertisements of the appellant and its labels plainly show that its product is not the appellee's. The public must be credited with a minimum capacity for discrimination. Armour & Co. v. Louisville Provision Co., 283 F. 42 (C. C. A. 6), certiorari denied 260 U. S. 744, 43 S. Ct. 164, 67 L. Ed. 492; Wornova Mfg. Co., Inc., v. McCawley & Co., 11 F.(2d) 465 (C. C. A. 2); Stevens Linen Works v. William & John Don & Co., 121 F. 171, 173 (C. C. S. D. N. Y.).

■ The commercial impression of a trade-mark is derived from it as a whole and not from its elements separated and considered in detail. See Beckwith's Estate, Inc., v. Comm'r of Patents, 252 U. S. 538, 545, 546, 40 S. Ct. 414, 64 L. Ed. 705. And it is presumed that purchasers will act with ordinary care to see that they get what they want. The test is whether the similarity of trade-marks would mislead the ordinary observer. Ward Baking Co. v. Potter-Wrightington, 298 F. 398 (C. C. A. 1).

It was improvident to grant this injunction (1) because the appellee could not register as a valid trade-mark the word "Imperial"; and (2) because on this record the appellee has not established a secondary meaning through use sufficient to build up a reputation warranting such a conclusion.

Order reversed.