## LADY ESTHER, Limited, v. FLANZBAUM.

No. 590.

District Court, D. Rhode Island.

March 30, 1942.

and are widely advertised. The first advertisement of complainant appeared about 1921 in a nationally distributed magazine. Subsequently the complainant advertised its products in many newspapers and magazines published throughout the United States and on radio programs. In 1923 full page advertisements appeared in a national weekly that also had a circulation in Providence and other parts of Rhode Island of over 50,000.

"Lady Esther" cold cream was sold in one department store in Providence in 1923 and shortly after 1926 the complainant's products were sold in another Providence department store for three or four years.

In 1931 the complainant began to use national radio broadcasts to advertise its products and well known orchestras appeared on its programs. Since then it has used national radio broadcasts at least once a week.

The complainant has spent for newspaper advertisement from January 1, 1921, to October 1, 1939, $1,564,352.12; for magazine advertising from 1933 to October 1, 1939, $494,398.79; for radio time from January 1, 1931, to October 1, 1939, $5,035,796.03; for radio talent from 1933 to October 1, 1939, $1,962,372.19; for samples from 1924 to October 1, 1939, $847,030.94. The complainant has also spent several thousand dollars for electros, co-operative advertising, inserts, etc. Its various advertising costs in 1931 amounted to $78,262.65, and in 1935 they totalled $1,801,119.65. The complainant's advertising costs exceeded a million dollars each year from 1934 to 1939, inclusive.

About 1921 or 1923 the complainant used script in its "Lady Esther" trade-mark which appeared on every package sold. The complainant's goods achieved a national distribution in 1923 to 1925 and such distribution has continued to date.

The complainant's sales in Providence in 1931 amounted to $81.69; in 1932, $3,596.49; in 1933, $15,311.33, and for the years 1934 to 1939 they were in excess of $15,311.39, the peak year being 1934 when they amounted to $21,022.86. Sales were also made in other parts of Rhode Island.

In 1931 the complainant spent for radio advertising in Providence $3,662.10; and in 1933 for radio time and talent $9,228.03; in 1934, $13,817.25; in 1935, $13,350.89; in 1936, $19,194.43; in 1937, $21,145; in 1938, $16,033; in 1939, $15,238.

Thomas A. Jenckes, of Providence, R. I., and Irving S. Adler, of Chicago, Ill., for complainant.

Sidney L. Rabinowitz and John E. Mullen, both of Providence, R. I., for respondent.

HARTIGAN, District Judge.

This is a suit in equity for trade-mark infringement and unfair competition.

The respondent denies the allegations of infringement of the trade-mark and of unfair competition and has filed a counter-claim in the nature of a cross-bill for equitable relief.

The complainant is an Illinois corporation and the respondent is a citizen of Rhode Island.

The alleged infringement involves the trade-mark "Lady Esther" Number 143,921, registered June 21, 1921, in the United States Patent Office, for face powders, face creams and rouge.

The gist of this action is unfair competition in the use by the respondent of the trade-name "Lady Esther" in connection with the sale of ladies' shoes and stockings. There is no testimony that the respondent ever used the trade-name "Lady Esther" in connection with cosmetics.

The complainant and its predecessors have used continuously since 1913 the trade-name "Lady Esther" for cosmetics which are sold throughout the country

The complainant has advertised on Providence radio stations at least once weekly since 1931; in 1935 three times a week; in 1936 and 1937 two nights a week, and in 1938, 1939 and 1940 at least one night a week of a half hour duration.

The net sales of the complainant amounted to $3,831,885 in 1939 of which amount $16,568 were derived from sales made in Providence.

The complainant filed in the office of the Secretary of State of Rhode Island on March 7, 1934, pursuant to the provisions of Chapter 223 of the General Laws of the State of Rhode Island (1923), its trademark for cosmetics of all kinds, the essential feature of which consisted of the name "Lady Esther" written in a particular script.

The complainant produced three witnesses who bought shoes from the respondent in 1935, 1938 and 1941 which were marked "Lady Esther". Their testimony, however, was not convincing that they believed the shoes were the products of the complainant.

The respondent testified that he has been in the retail shoe business for thirty-one or thirty-two years and that he first used the name "Lady Esther Shoes" in Leon's Shoe Store in Worcester, Mass., "about 1930" and two or three months after that he sold such shoes in Bailey's Shoe Store in Providence. In 1934 he opened a "Lady Esther Shoe Store" in Providence which he operated for about seven or eight months. A few months later he opened another "Lady Esther Shoe Store" in Providence which remained in operation for about a year. In 1935 he opened a "Lady Esther Shoe Store" at 1936 Westminster Street in Providence which he still operates.

The respondent testified that it was in 1932 he displayed the first "Lady Esther" shoe sign in the window of his Worcester store.

The shoes sold by the respondent bore labels upon which were printed "Styled Exclusively for Lady Esther" (Ex. 26); some were marked on the outer and inner soles "Lady Esther Fashion Arch" (Ex. C); others were marked on the inner sole "Lady Esther" (Ex. A). The shoe boxes used by the respondent in his store were plainly marked in script with the words "Lady Esther".

The front of the respondent's store in Providence conspicuously displayed five signs, including a large Neon sign, all containing the words "Lady Esther" in script similar to the script used by the complainant. The respondent also used a horizontal elongation of the letter "L" in the word "Lady" very similar to that used by the complainant on its products and as appears in complainant's registered trademark.

The respondent in his direct examination testified that he first used the name "Lady Esther Shoes" in his Worcester store "about 1930". In his cross-examination he testified he first used the name in 1932. He admitted that he never used an electric sign with the name "Lady Esther" on it before the opening of the first "Lady Esther Shoe Store" in 1934 in Providence. He was unable to tell who made the first "Lady Esther" label for the shoes.

The respondent's son, testifying after his father, said "Lady Esther" was used first in 1930 in Leon's Shoe Store in Worcester and that the name "Lady Esther" was adopted because it was the nickname of his wife. This witness admitted that this adoption of the trade-name was not until about five years after his marriage during which period the respondent was operating shoe stores under less fanciful names.

The evidence convinces me and I find that the respondent did not use the name "Lady Esther" prior to 1932 by which time the complainant's use of that name was well known in Providence and other parts of Rhode Island because of newspaper advertisements, radio broadcasts and the sale of the complainant's goods in stores. The respondent denied that he knew of such use of the name "Lady Esther" by the complainant but this seems inconceivable under the circumstances.

The products of the parties are used by women. The trade-name "Lady Esther" is fanciful. The complainant has spent large sums of money in advertising to build up good-will and to make its trade-name and products known to the purchasing public. The complainant used the trade-name for about twenty-nine years before the respondent adopted it in his business.

Assuming that the respondent adopted the trade-name "Lady Esther" because, as his son testified, it was the nick-name of his son's wife and the adoption was made in good faith, I do not believe that it can be charged to coincidence that the

respondent adopted practically the same script on his advertising signs and on his products as the complainant used in its trade-mark on its products.

In the case of Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, D.C., 20 F.Supp. 703, 704, the court said:

"The plaintiff seeks to restrain the defendant from using its trade-name 'A & P' in connection with its business of selling radios, washing machines, and electric refrigerators. None of these articles is sold by the plaintiff. Consequently the first question presented is whether the owner of a nationally known and valuable trade-name may restrain its use by a third party in connection with a noncompeting business. It is quite clear that in such a case the defendant is not actually diverting custom and trade from the plaintiff. Such an injury, however, is not the only one which may result. As was said by Mr. Justice Shientag in Philadelphia Storage Battery Co. v. Mindlin, 163 Misc. 52, 296 N.Y.S. 176, 178: 'The normal potential expansion of the plaintiff's business may be forestalled. * * * His reputation may be tarnished by the use of his mark upon an inferior product. * * * A false impression of a trade connection between the parties may be created, possibly subjecting the plaintiff to liability or to the embarrassments of litigation, or causing injury to his credit and financial standing.'

"The underlying principle involved in these cases was well put by Circuit Judge Learned Hand in Yale Electric Corporation v. Robertson [2 Cir.], 26 F.2d 972, 974, as follows: 'However, it has of recent years been recognized that a merchant may have a sufficient economic interest in the use of his mark outside the field of his own exploitation to justify interposition by a court. His mark is his authentic seal; by it he vouches for the goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.'

"It is on the basis of this developing conception of unfair competition that the courts have repeatedly restrained the use of similar trade-marks on noncompeting goods. See Walter v. Ashton, [1902] 2 Ch. 282; Aunt Jemima Mills Co. v. Rigney & Co. [2 Cir.], 247 F. 407, L.R.A. 1918C, 1039, certiorari denied 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540; Aluminum Cooking Utensil Co. v. Sargoy Bros. & Co., D.C., 276 F. 447; Vogue Co. v. Thompson-Hudson Co. [6 Cir.], 300 F. 509; Wall v. Rolls-Royce of America [3 Cir.], 4 F.2d 333; Hudson Motor Car Co. v. Hudson Tire Co., D.C., 21 F.2d 453; Duro Co. v. Duro Co. [3 Cir.], 27 F.2d 339; Standard Oil Co. v. California Peach & Fig Growers, D.C., 28 F.2d 283; Del Monte Special Food Co. v. California Packing Corporation [9 Cir.], 34 F.2d 774; Waterman Co. v. Gordon [2 Cir.], 72 F.2d 272; Alfred Dunhill of London v. Dunhill Shirt Shop, D.C., 3 F.Supp. 487; Great Atlantic & Pacific Tea Co. v. A. & P. Cleaners & Dyers, D.C., 10 F.Supp. 450."

In the case of Alfred Dunhill of London, Inc., v. Dunhill Shirt Shop, Inc., D.C., 3 F.Supp. 487, the court said:

"I think this is a plain case for injunctive relief. The only conceivable reason for the use of the name 'Dunhill' by the defendant is to trade on the reputation and good will of the plaintiff. Indeed, that in substance is admitted in the answering affidavit, where it is stated that the name was chosen 'because we wanted a name for our men's haberdashery shop that would be associated with "the English" because of that people's great reputation in turning out well dressed men.'

"It is no answer that the defendant sells shirts, and the plaintiff, smokers' requisites. Wall v. Rolls-Royce [3 Cir.], 4 F.2d 333; Yale Electric Corp. v. Robertson [2 Cir.], 26 F.2d 972. Nor is it a defense that the defendant is incorporated, and that the name Dunhill appears in its corporate title. * * *"

The facts in the instant case entitle the complainant to equitable relief.

### Findings.

I find that the respondent adopted the name "Lady Esther" with the intention to benefit by the use of the trade-name of the complainant.

I find that the respondent's use of the trade-name "Lady Esther" is likely to confuse and deceive the purchasing public in believing the products of the parties have the same origin.

I find that the complainant's trade-name was well known in Rhode Island and that

its products were sold there for a long time prior to the time that the respondent began the use and sale of his goods under the trade-name "Lady Esther".

I find that the complainant has not suffered any pecuniary loss.

### Conclusions of Law.

The evidence in this case leads me to the conclusion that the respondent's use of the name "Lady Esther" in connection with his business constitutes unfair competition with the complainant in violation of the law.

The complainant is entitled to an injunction against the respondent restraining him from using the name "Lady Esther" in connection with his business.

The respondent has stated in his brief "* * * the respondent * * * has refrained from offering any proof in support of his counterclaim, and has no objection, at this time to its dismissal." The respondent's counterclaim is, accordingly, denied and dismissed.

I will hear the parties on April 6, 1942, at 10 A. M., on the form of judgment to be entered and the matter of costs.