The **FEDERAL GLASS COMPANY**, Plaintiff,

v.

Samuel **LOSHIN** and Nathan Loshin, Defendants.

Civ. A. No. 4357.

United States District Court
D. Connecticut.

July 14, 1954.

Wiggin & Dana, New Haven, Conn., Corbett, Mahoney & Miller, Columbus, Ohio, for plaintiff.

Spiro & Levine, Danbury, Conn., for defendants.

SMITH, Chief Judge.

This is an action for unfair competition wherein the plaintiff, an Ohio glassware manufacturer, seeks to enjoin the defendants, proprietors of a Danbury, Connecticut company specializing in plate glass installation, from using its corporate name, alleging that the defendants are obtaining the benefit of the plaintiff's reputation and causing confusion to the public. The case is before the court on plaintiff's motion for summary judgment filed with supporting affidavits. Defendants have also filed affidavits in opposition to said motion.

Plaintiff Federal Glass Company is an Ohio corporation founded in 1900 in Columbus, Ohio and incorporated under the laws of that state in 1904. Plaintiff manufactures at its Ohio plant glass products such as pressed tumblers, packers tumblers, pressed and blown tumblers, machine pressed dinner ware, kitchen ware, and decorated tumblers and jugs. Plaintiff's products are distributed and sold all over the United States and in foreign countries; it maintains offices and sales representatives throughout the country although the nearest to Connecticut are in Boston and New York. Plaintiff's sales run into millions of dollars annually, and plaintiff at the present time spends thousands of dollars advertising nationally in magazines, by direct mail and by direct distribution of literature by its salesmen. Plaintiff's method of operation is to sell to selected distributors such as hotel and restaurant supply jobbers, merchandise jobbers, variety stores, chain stores, premium users, manufacturers, hardware dealers, furniture stores, gift shops, department stores, glass cutters and decorators, and jewelry stores.

Plaintiff's sales in Connecticut have increased from a figure of $4,845 in 1927 to $22,047 in 1952 without a breakdown as to sales in the Danbury area. Plaintiff's sales in Connecticut apparently commenced approximately in 1904. Plaintiff's advertising costs annually have risen from $2,517.36 in 1925 to $80,835 in 1952 without a breakdown as to what percentage of costs are allocable to specific advertising media.

The defendants, Samuel and Nathan Loshin, have operated their glass installation business in Danbury and the immediate vicinity as a partnership doing business under the name Federal Glass Company since 1945. The defendants' name, however, was first used by one Joseph Perl, the prior owner of the firm, who filed the name with the town clerk of Danbury in 1925. Defendant Samuel Loshin purchased the business under the same name in 1926, and the concern has since operated under that name in the sales and installation of plate glass, window glass, mirrors, automobile glass and store fronts, building up a considerable business in the Danbury area.

Plaintiff essentially contends on its motion for summary judgment that the fact of the identity of the business names involved, its prior use of the name, and its prior established reputation as a glassware firm entitles it to relief here. It is not disputed that

plaintiff was in the glassware business some 20 years before the defendants' concern's prior owner started his glass installation concern under the same name. Nor is there any question that plaintiff was a firm with a nation-wide business in 1925 when defendants' name was first used by the prior owner Perl, although it is not established that it had then established any volume of business in the Danbury area. Defendants' business is admittedly restricted to Danbury and the immediate neighboring vicinity.

■ Defendants' contention that plaintiff cannot possibly demonstrate the requisite pecuniary harm since defendant as a glass installer is in no way competing with plaintiff's glassware products is not well taken. Damage to sales is not the only injury which courts will consider in determining whether an injunction should be granted restraining one from using a name which confuses its identity with another, as a person is entitled to be free from the possible danger to its reputation which might result by the public's confusion of the identity.

■■ Moreover, defendants' presentation of affidavits to the effect of no actual confusion between the two firms by various Danbury concerns is not conclusive of the issue as stated in Connecticut decisions. If the court finds that the use of the same name or a distinctive portion thereof is likely to deceive the public and result in injury to the plaintiff, relief will be afforded. Middletown Trust Co. v. Middletown National Bank, 1929, 110 Conn. 13, 147 A. 22; Yale Cooperative Corp. v. Rogin, 1947, 133 Conn. 563, 53 A.2d 383.

■ However, one of the principal elements of the requisite deception of the public is proof of an established reputation by the plaintiff at the time the defendant first uses the same or a similar name. Premier-Pabst Corp. v. Elm City Brewing Co., D.C.D.Conn. 1935, 9 F.Supp. 754; also, Lady Esther, Ltd. v. Flanzbaum, D.C.D.R.I.1942, 44 F.Supp. 666. Without some showing of a secondary meaning or general reputation in reference to the use of a certain name in a specific area, no inference of fraudulent intent on the defendants' part may be drawn, nor, if the finding of fraudulent intent is deemed unnecessary, is it possible to assert any likely deception to the general public.

In the present state of the action at bar, plaintiff has failed to prove that in 1925, at the time defendants' company's prior owner first made use of the name Federal Glass Company, plaintiff had any established reputation with the general public of the Danbury area. Plaintiff's expenditures for national advertising at that time totaled only some $2,500, and there is no proof of the amount of advertising in outlets reaching the general public. Plaintiff admits no local Danbury advertising. In the Premier-Pabst Corp. case, supra, plaintiff was distributing a beer which it called "Old Maestro" in a national radio advertising campaign tied to the popular entertainment personality, Ben Bernie. Defendant then put out a competing beer which it called "Olde Maestro". In granting an injunction to the plaintiff, Judge Hincks in a thorough analysis of this area of unfair competition emphasized the element of "public recognition of its identity" [9 F.Supp. 760] and took notice of the fact that such a radio campaign was reaching much of the general public in the class of potential purchasers likely to be confused. There is no such showing here. On the same point, Lady Esther, supra; Stork Restaurant, Inc., v. Sahati, 9 Cir., 1948, 166 F.2d 348; Stork Restaurant, Inc., v. Marcus, D.C.D.Pa.1941, 36 F.Supp. 90.

■ Plaintiff relies on the case of Federal Glass Co. v. Federal Glass Co., Inc., D.C.D.Del.1952, 104 F.Supp. 692, where on reargument the court granted summary judgment to the defendant on the condition that it change

its name as it offered to prior to reargument. The holding there appears to be that the identity of name alone might cause confusion, and a slight change would merit summary judgment for defendant. In that case, however, defendant first used the name Federal Glass Company, Inc. in 1947 when plaintiff's advertising was much more extensive than in 1925 and its reputation and good will more readily accepted at the summary judgment stage. Moreover, there plaintiff brought action two years after defendant's first use of the name. The defense of laches here is questionable in view of the fact that plaintiff claims only recent knowledge of defendant's existence. Identity of name alone is not enough to cause confusion for which legal or equitable relief may be afforded; there must also be proof of secondary meaning or an established general reputation at the time of defendant's initial use. See Premier-Pabst Corp. v. Elm City Brewing Co., supra; Brooks Bros. v. Brooks Clothing of California, D.C.S.D. Cal.1945, 60 F.Supp. 442.

■ Plaintiff's assertion that it sells primarily to glass distributors and directs much of its advertising to them creates further doubt as to any confusion now, much less in 1925, in the eyes of the general public or of the jobbers. In the absence of any adequate showing here of established reputation in the Danbury area in 1925, plaintiff's motion for summary judgment is without foundation.

Realizing the prerequisite of an established general reputation at the time of defendants' first use, plaintiff has introduced exhibits showing costs of advertising over a period of years plus sales in Connecticut to a limited number of dealers since 1903. The crucial defect in this evidence, however, is illustrated by plaintiff's counsel's statement at page 4 of his brief:

"The plaintiff has always advertised on a national scale. While advertising before 1926 was more limited, as in the case of most companies, still its products were brought to the attention of buyers in the Connecticut market before 1926 by the circulation of catalogues and other promotional literature."

■ This limitation of reputation is a fatal flaw in plaintiff's case here. Such catalogues as evidenced by his exhibit B were solely for the attention of distributors, and it is extremely questionable whether the general public even knew of Federal Glassware products when they went into a store to purchase glassware. At least the exhibits now before us would not demonstrate it. And the distributors would hardly be deceived, in view of the difference in the types of business of plaintiff and defendant.

■ To compensate for this lack of evidence on general reputation and good will, plaintiff has attempted to shrug off the 1925 date and set up 1945, the date of the Loshins' registration as the date that should be considered that of defendants' initial use. This claim is based on two facts. Perl registered the name Federal Glass Company as his business in the Danbury town clerk's office in 1925, but defendant Samuel Loshin failed to register his name as the proprietor when he purchased the business and name from Perl in 1926. There is, and was in existence then a Connecticut statute imposing a penalty on any person conducting or transacting business under a fictitious trade name without filing a certain certificate of identification in the town clerk's office. See Connecticut General Statutes (1949 Rev.) Sec. 6728.

Such a statute, however, imposes exclusively the penalty defined therein. It was held in Sagal v. Fylar, 1915, 89 Conn. 293, 93 A. 1027, L.R.A.1915E, 747, that such a statute renders the offender only liable to fine or imprisonment as provided by the Act, and does not prevent him from enforcing any contract he has made which is otherwise legal.

Thus 1926 is the key date, and unlike every one of the cases cited by plaintiff to demonstrate that the factor of competitive businesses is not essential to relief and that possible damage to reputation is injury enough without any showing of financial harm, plaintiff fails to meet the other principal legal requirement of those cases, namely that the plaintiff must establish proof of a general reputation at the time of defendant's initial use to merit relief. See Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972; Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 1932, 56 F.2d 973; Lady Esther, Limited v. Flanzbaum, D.C.D.R.I.1942, 44 F.Supp. 666; Buckspan v. Hudson's Bay Co., 5 Cir., 1927, 22 F.2d 721; Stork Restaurant, Inc., v. Sahati, 9 Cir., 1948, 166 F.2d 348; Stork Restaurant, Inc., v. Marcus, D.C.D.Pa.1941, 36 F.Supp. 90.

The Lady Esther case, supra, posed the same question of priority in the local field as our situation here. Plaintiff there, however, established its prior local reputation. The defendant was enjoined from using the name Lady Esther Shoes where plaintiff had an established reputation with the general public for its Lady Esther cosmetics. The court stated in regard to the requisite of secondary meaning:

> "The evidence convinces me and I find that the respondent did not use the name 'Lady Esther' prior to 1932 by which time the complainant's use of that name was well known in Providence and other parts of Rhode Island because of newspaper advertisements, radio broadcasts and the sale of the complainant's goods in stores." [44 F.Supp. 668.]

There the plaintiff had introduced a breakdown of national advertising costs per media in the Providence area in 1931. Here plaintiff frankly admits that its national advertising prior to 1926 was quite limited and that even today most of it is directed at distributors.

 The question then is whether in 1926 there could be harm to plaintiff's general reputation by the likelihood of deception of the public. Even if the term "public" may be applied to a handful of distributors, there is no showing that they in 1926 were likely to infer that some action of the defendant was that of the plaintiff so as to harm plaintiff's reputation with them. Plaintiff has failed to establish secondary meaning in any sense here. We do not believe that the admittedly expanding area of unfair competition doctrine can be applied to such a situation, nor would it be desirable to do so.

Plaintiff's motion for summary judgment is denied.