Taet, C. J.,
dissenting in part. I concur in the syllabus but dissent from the judgment insofar as it extends the relief given plaintiff by the Court of Appeals and to the extent that it refuses to provide for cancellation of plaintiff’s registration of “securance” as a service mark.
With respect to the quotation in the majority opinion from 3 Callman, Unfair Competition and Trade-Marks (2 Ed.), 1202, it is stated in the 1961 Cumulative Supplement to that book:
“The determination of common-law rights should not be governed by an arbitrary rule of thumb. The territory may be smaller or larger than one state, and as Judge Woolley in Jacobs v. Iodent Chemical Co., 41 F. 2d 637 (C. C. A. 3rd, 1930) pointed out, the majority of the Supreme Court apparently did not adopt Mr. Justice Holmes’ view. For other opinions disagreeing with the Holmes doctrine, see Food Fair Stores, Inc. v. Square Deal Market Co., Inc., 206 F. 2d 482 (App. D. C. 1953), aff’g 109 F. Supp. 637 (D. C. D. C. 1952); Federal Glass Co. v. Loshin, 126 F. Supp. 737 (D. C. Conn. 1954), aff’d 224 F. 2d 100 (C. A. 2nd 1955); Forzly v. American Distilling Co., 142 F. Supp. 210 (D.C.E.D.N.Y. 1956).”
In 3 Restatement of the Law, Torts, under Section 73'2, which is cited in the majority opinion as authority for the state *11 ment incorporated in paragraph two of the syllabus, the comment reads in part:
“The territorial limits within which the right to exclusive use of a trademark or trade name exists may be narrower than the territorial limits of the law that creates the right. * * * If the trade-mark or trade name is unknown in a particular territory and there is no probability that it will become known there, the use of a similar designation in that territory will cause no harm to the person having the trade-mark or trade name, since it cannot lead to mistaken association with that person. Such might he the case of the trade name of a grocery store in a small city in northern New York and a similar designation used for a grocery store in Brooklyn, N. Y. * * * Between the case of the local grocery store, at one extreme, and the nationally advertised house doing a nation-wide business, at the other, there is a progression of businesses with more or less extensive markets. In each ease the issue is whether, in the territory in which the similar designation is used, there are or are likely to be a considerable number of prospective purchasers of the goods or services in connection with which the trademark or trade name is used, who are likely to be misled by the similarity. ’ ’
In the conclusions of fact of the Court of Appeals, there is nothing tending to indicate even a possibility of plaintiff’s business being statewide. Paragraph one uses the words “sale of * * * insurance in Sandusky County * * * with offices * * * in said county.” Paragraph three refers to “employing * * * as * * * service mark in * # * plaintiff’s insurance business located in Sandusky County.” Paragraph four refers to “the promotion, expansion and conduct of plaintiff’s insurance business in and to areas substantially beyond the boundaries of said Sandusky County” but does not indicate how far beyond those boundaries. Paragraph six refers to defendant Nationwide having used the name “ ‘securance’ * * # in unfair competition with plaintiff’s insurance business in Sandusky County.” The conclusion of law finds plaintiff entitled to an injunction against defendant “in the operation of defendant’s insurance business in Sandusky County.” In the final order of the Court of Appeals there is a finding of use as a “service *12 mark” in “plaintiff’s insurance business * * * in Sandusky County” and the injunction is “from using * * * in * * * defendant’s insurance business within * * * Sandusky County.”
Admittedly, there was no registration of the service mark until May 1960 and there had been substantial use by defendant Nationwide of that service mark in its business in other parts of Ohio before May 1960.
Admittedly, the extent of the right to a service mark depends upon the extent of the use or the probability of use in a territory for which the right to the mark is claimed. Here the plaintiff is a local insurance agency. The probability of plaintiff’s use of the mark very far from Sandusky County would be very remote. In fact, on the evidence in this record, there would be no such probability. Hence, under the law as stated in the syllabus of this case, defendant Nationwide, by using that mark in portions of Ohio substantially distant from Sandusky County, acquired a right to the use of the mark in those portions of Ohio.
Section 1329.55, Revised Code, at the time this mark was filed, read in part:
“A * * * service mark * * * shall not be registered if it
“(F) Consists of * * * a * * * service mark * * * previously used in this state by another
In May 1960, when plaintiff sought to register the service mark, that mark had been previously used by Nationwide throughout portions of Ohio as to which there was no reasonable possibility that plaintiff’s business would ever extend. Section 1329.56, Revised Code, required plaintiff’s application to have “(D) a statement that the applicant is the owner * * * and that no other person has the right to use such * * * service mark in the state of Ohio.”
In May 1960, when this application was filed, plaintiff knew that the mark had been used substantially by defendant Nationwide in portions of Ohio which would never possibly be reached by plaintiff’s business. Under the law as stated in the syllabus of this case, the right to the mark in parts of Ohio distant from Sandusky County was in defendant Nationwide and not in plaintiff when plaintiff filed that application.
*13 Section 1329.62, Revised Code, indicates that there should be cancellation when “the registration was granted improperly” and that “a court of competent jurisdiction” may order such cancellation.
The extent to which plaintiff’s business might probably go territorially and therefore the territorial extent of the protection to be given plaintiff involved questions of fact. The Court of Appeals made findings on such facts when it determined that the territorial extent of protection to be given plaintiff should not be beyond Sandusky County. In order to give the greater protection that it is giving to plaintiff, this court would have to find as a matter of law that there was a probability of plaintiff’s business extending throughout the state of Ohio. There is nothing in the record, not even any allegation in the pleadings, to indicate any such probability or even any such possibility.
The effect of this decision is to give plaintiff, as the operator of a local insurance agency, a monopoly in this state in the use in the insurance business of a dictionary word, even though there has been and is no reasonable possibility of any use of that word by plaintiff in most of the territory of this state.
Matthias, J., concurs in the foregoing opinion by Taft, C. J.