HITCHCOCK v. AMERICAN PLATE GLASS CO. AMERICAN PLATE GLASS CO. v. HITCHCOCK. CRUIKSHANK v. SAME.

(Circuit Court of Appeals, Third Circuit. June 26, 1919.)

Nos. 2451–2453.

1. PATENTS ⬙318(1) — INFRINGEMENT — DAMAGES—PROFITS—ASSIGNMENT — PRESUMPTION.

Where contract for installation of infringing apparatus for defendant company was assigned by contractor without consent of company, and neither the company nor the assignee would have a right of action, it must be assumed that the contract made between contractor and company remained a contract between them despite assignment, and that the profits made inured to the one who contracted for them.

2. PATENTS ⬙318(1)—INSTALLATION OF INFRINGING APPARATUS—LIABILITY OF CONTRACTOR.

Having contracted to install an apparatus and to receive therefor a consideration that included a profit, which has since been found to be an infringing profit, and having been paid directly a part of the moneys under the contract, contractor could not assign his liability for his act of infringement by assigning the contract and its profits to another.

3. PATENTS ⬙310(7)—INFRINGEMENT—PERSONAL LIABILITY—PLEADING.

Where defendant failed to plead that another was the sole infringer in installing apparatus, though he had the opportunity under the rules of good pleading to so plead, he is estopped to deny personal liability to the extent of the profits which he actually received, for infringements in which he personally participated.

4. CORPORATIONS ⬙306—TORTS—LIABILITY OF OFFICERS.

The director of a corporation is ordinarily liable only for those torts which he himself commits.

5. PATENTS ⬙287—INFRINGEMENT BY CORPORATION—LIABILITY OF DIRECTOR OR MANAGER.

Where a director or manager of a corporation, who sustains to the corporation the relation of master or principal in the sense of being its dominating force, himself commands the commission of an infringement

⬙For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by the corporation, though he does it as an officer and in the name of the corporation, he is individually liable.

6. PATENTS ☞287—INFRINGEMENT BY CORPORATION—LIABILITY OF DIRECTOR OR MANAGER.

In an action for infringement of letters patent, an individual, who has inspired the tort and has participated in its commission, is a joint tort-feasor, and must yield to the person whose rights he has invaded the profits which he has gained thereby.

7. PATENTS ☞287—INFRINGEMENT BY CORPORATION—LIABILITY OF DIRECTOR OR MANAGER.

When a corporation infringes in obedience to the command of an officer with power to cause the corporation to commit or refrain from committing the infringing act, and when that officer participates in and contributes to the infringement, they are in the eye of the law joint tort-feasors, and both are liable, in the same or in different measures, according to the circumstances.

8. PATENTS ☞287—INFRINGEMENT—PARTICIPATION—EVIDENCE.

The character and extent of officer's participation in the infringing acts of a corporation which he organized *held* such as to bring about infringements.

9. PATENTS ☞287—INFRINGEMENT BY CORPORATION—PERSONAL LIABILITY OF OFFICER.

In suit for profits of infringement, officer, who inspired, brought about, and directed infringements by corporation, is personally liable for the profits of the infringement which he actually received.

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit by Halbert K. Hitchcock against the American Plate Glass Company and others. From the decree rendered, both complainant and defendants appeal. Affirmed, reversed, and modified in accordance with opinion.

Marshall A. Christy, of Pittsburgh, Pa., for complainant.

Charles M. Clarke, of Pittsburgh, Pa., and Francis T. Chambers, of Philadelphia, Pa., for defendant American Plate Glass Co.

Ward Bonsall, of Pittsburgh, Pa., for defendant Cruikshank.

Before BUFFINGTON, WOOLLEY. and HAIGHT, Circuit Judges.

Waiving damages, the complainant demanded an accounting of profits gained by the American Plate Glass Company from savings which it made by the use of the infringing apparatus, and of profits gained by Cruikshank, the designer and builder of the infringing apparatus, from building the same for the defendant company and from building like apparatus for other plate glass manufacturers.

Savings by the defendant company gained by infringement involved savings in many items, such as labor, power, repairs, lubricants, breakage, runner iron, plaster, and grinding sand. The evidence of savings made in these items was voluminous and the issues arising therefrom were sharply controverted. Both parties appealed from the decree. The decision on these cross-appeals, as indicated by an opinion corresponding in length with the volume of the evidence, is of interest to no one except the parties directly concerned. It will on the request

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the judge writing the opinion be omitted from the report of the case. The opinion of the court on the appeal of Hitchcock from that part of the decree which relieved Cruikshank from accounting, however, contains rulings on the law of accounting that extend beyond the parties. This part of the opinion is reported as follows:

WOOLLEY, Circuit Judge. The complainant, by his bill of complaint, made James W. Cruikshank, the designer and builder of the infringing apparatus, a party defendant in this action; and, waiving damages, prayed an accounting by him for the profits he had gained from building the infringing apparatus for the American Plate Glass Company, his codefendant, and also for building like apparatus for other plate glass manufacturers. The master found Cruikshank liable to the complainant for profits he had made under a contract with the defendant company for installing · the infringing apparatus, amounting to $2,268.34; and found against the complainant's claim of profits gained by Cruikshank in installing infringing apparatus for other concerns. Cruikshank appealed from the first finding, and Hitchcock from the second.

It is stipulated that the profits gained by installing the apparatus for the defendant company amounted to the sum found by the master, but whether these profits enured to Cruikshank or to another was designedly left open for decision. The facts out of which this phase of the controversy arose are not controverted; their inferences, however, are in sharp dispute. In so far as they relate to the appeal of Cruikshank, the facts are briefly these:

[1, 2] The infringing apparatus was installed by Cruiskshank under a contract made between himself and the defendant company, the American Plate Glass Company. Pending its performance, Cruikshank assigned the contract to Glass Machinery Company, a corporation whose character and whose relation to Cruikshank and his transactions will presently be considered in the discussion of Hitchcock's appeal against Cruikshank. The contract was between the parties individually and not between them and their assigns. Nor was the assignment made with the assent, or so far as we are informed, with the knowledge of American Plate Glass Company. Tested by the contract rights of the contracting parties, in which, manifestly, in the absence of novation, the American Plate Glass Company would have no right of action on the contract against Glass Machinery Company, or Glass Machinery Company against American Plate Glass Company, it must be assumed that the contract made between the parties remained a contract between them, notwithstanding the attempted assignment, and that profits made under the contract enured to the one who contracted for them. Having contracted to install an apparatus and to receive therefor a consideration that included a profit, —which has since been found to be an infringing profit—and having been paid directly a part of the moneys under the contract, Cruikshank could not assign his liability for his act of infringement by assigning the contract and its profits to another. The act of infringement admittedly being solely his in origin and in part performance, and being..

jointly his in completion, he is liable for the profits derived from his invasion of the complainant's rights, whether he got all of them or voluntarily divested himself of some of them. If this were not so, every tortfeasor could forgive his own wrong by assigning the instrument under which he contracted to do the wrong, and thereby escape liability to the party he has injured.

We direct that the part of the decree from which Cruikshank appealed be affirmed.

We shall next review Hitchcock's appeal from that part of the decree which relieved Cruikshank from liability for the other infringements.

The bill of complaint charged the American Plate Glass Company with one act of infringement and James W. Cruikshank with several. The sole parties joined as defendants in this action were the American Plate Glass Company, as user of the infringing apparatus, and Cruikshank, as designer and builder of that apparatus and of several others. Each party appeared and assumed sole responsibility for the acts of infringement thus severally charged. Cruikshank neither in his pleadings nor in his testimony at the trial disclosed the existence, or the relation to the infringements, of Glass Machinery Company, with the result that the case proceeded to decree in the District Court, and was reviewed in this court on appeal, without Cruikshank disclosing that company or asserting its liability for the infringing acts charged to him. It was only after the interlocutory decree for an injunction had been entered against him and affirmed, and after he was called upon under that decree to account for infringing profits, that he brought to light the Glass Machinery Company and attempted to shift to it his responsibility for infringement. It was on this issue thus raised on the accounting and not on the issue as made by the pleadings that the part of the decree now under review was entered.

[3] If Glass Machinery Company was the sole infringer in making and installing infringing apparatus for concerns other than the defendant company, Cruikshank had his opportunity to plead that fact to the bill of complaint and thereby defend to that extent against the charge of infringement made against him. This plea should have been—by analogy to like pleas both at law and in equity—not in bar of the action, but in abatement of the action on the ground of misjoinder. Such a plea would, of course, have involved disclosure by Cruikshank of Glass Machinery Company as the proper party. The complainant could then have amended and have prosecuted his action against the real infringer. This, Cruikshank did not do when under the rules of good pleading he was afforded an opportunity; nor did he do it until he was called upon to account for profits he had gained by infringements which the court, by its decree, found he had committed. The accounting was made and the decree thereon was entered by the lower court and brought before this court for review, however, on the issue of liability between Cruikshank and Glass Machinery Company. We are not prepared to say, in the light of a variety of circumstances occurring in the accounting, that Cruikshank's defence of the liability of Glass Machinery Company, thus

tardily made, cannot now be heard,—though the question is a close one—but we are satisfied, that by the character of his pleading, Cruikshank has estopped himself to deny personal liability for infringements in which he personally participated to the extent of profits which he actually received from them.

The starting point of this phase of the appeal is a stipulation entered into between Hitchcock and Cruikshank that "profits gained from the installation of substantially the same apparatus (as that of the defendant company) for other plate glass manufacturing companies herein above mentioned amount to $11,948.31." There being no question as to the amount of profits thus gained by infringements other than that of American Plate Glass Company, the question here is: Who got the profits? The master found that Cruikshank did not get them, because they were paid to and were received by Glass Machinery Company under contracts between that corporation and glass manufacturers. From this finding, approved by the District Court, Hitchcock appealed.

The basis of Hitchcock's appeal is, that Glass Machinery Company was a corporation organized, owned, controlled, and used by Cruikshank as a mere cloak to avoid personal liability for the injury he was doing the complainant by infringing his patents, and that, in consequence, Cruikshank is liable to the complainant for whatever earnings the Glass Machinery Company gained by such infringements. Cruikshank's reply to this contention is, that the Glass Machinery Company was not a corporation used as a cover for his transactions, but was a separate entity legitimately conducting business under contracts made in good faith with glass manufacturers for the installation of glass grinding apparatus under his patents, which, until found otherwise in this litigation, were regarded by everyone as valid. The complainant's contention in a word is based on fraud and that this fraud consists in Cruikshank's use of Glass Machinery Company as an instrument to save himself from liability for his torts.

We agree with the District Court on the master's finding that Hitchcock has not brought himself within the principle of the cases on which he relies. In fact, we do not find the fraud on which this principle is based. But this conclusion does not acquit Cruikshank of liability for the things he actually did, if those things were wrong, and it does not preclude the complainant holding Cruikshank liable on another ground, if it exists, such for instance as that of joint tort-feasor. It is just this liability, we imagine, that Cruikshank has feared, because of the stress placed by his counsel on the contention that the infringing acts of the Glass Machinery Company were the separate corporate acts of that corporation, and on the further contention that Cruikshank's participation therein was merely that of an officer of the corporation, involving no personal liability for torts of the corporation. It may be well to consider just here the question, whether, and if so, when, an officer of a corporation is personally liable for the infringing acts of a corporation.

[4-6] The director of a corporation is ordinarily liable only for those torts which he himself commits. But his liability is not limited

to tortious acts which he actually and physically commits; it extends as well to tortious acts which he actually brings about. Where a director or manager of a corporation—who sustains to the corporation the relation of master or principal in the sense of being its dominating force—himself commands the commission of a tort by the corporation, though he does it as an officer and in the name of the corporation, he is individually liable. National Cash Register Co. v. Leland, 94 Fed. 502, 508, 37 C. C. A. 372. This is so, because in an action for infringement of letters patent, an individual, who has inspired a tort and has participated in its commission, is a joint tortfeasor, and must, on general principles of law and by analogy with other torts, yield to the person whose rights he has invaded the profits which he has gained thereby. When the joint tort is established, the individual joint tortfeasor cannot defend on the plea that the acts complained of were solely the acts of the corporation of which he was an officer, and that whatever was done by him was done only in that capacity. An executive officer of a corporation "cannot shield himself behind an artificial and sometimes irresponsible creation from the consequences of his own acts, even though performed in the name of an artificial body." Peters v. Union Biscuit Co. (C. C.) 120 Fed. 679; Saxlehner v. Eisner (C. C.) 140 Fed. 938. He cannot thus escape liability for a tort in which he actually participates. This doctrine has been sanctioned and enforced in Goodyear v. Phelps, 3 Blatchf. 91, Fed. Cas. No. 5,581; Poppenhusen v. Falke, 4 Blatchf. 495, Fed. Cas. No. 11,279; Iowa Barb Steel-Wire Co. v. Barbed Wire Co. (C. C.) 30 Fed. 123; National Cash Register Co. v. Leland, 94 Fed. 502, 37 C. C. A. 372; Smith v. Standard Laundry Machinery Co. (C. C.) 19 Fed. 826. See, also, Belknap v. Schild, 161 U. S. 10, 16 Sup. Ct. 443, 40 L. Ed. 599; Clark Thread Co. v. William Clark Co., 55 N. J. Eq. 658, 37 Atl. 599; Prest-O-Lite Co. v. Acetylene Welding Co., Leonard Lorentowitz, et al., 259 Fed. 940 (D. C. N. J. 1916). It is based on the rule stated in Cahoone Barnet Mfg. Co. v. Rubber & Celluloid Harness Co. (C. C.) 45 Fed. 582, 584:

"Every voluntary perpetrator of a wrongful act of manufacture, use, or sale of a patented article becomes ipso facto an infringer, and is legally responsible; and it therefore regards officers, directors, and agents employing or authorizing or assenting to the use of a patented invention as infringers, and personally responsible to the patentee."

[7] When a corporation infringes in obedience to the command of an officer with power to cause the corporation to commit or refrain from committing the infringing act, and when that officer participates in and contributes to the infringement, they are in the eye of the law joint tortfeasors and both are liable, in the same or in different measures according to the circumstances, for the injuries they have jointly inflicted upon the one whose rights they have jointly invaded.

[8] Such being the law, we must next inquire into the character and extent of Cruikshank's participation in the infringing acts of the Glass Machinery Company. To do this, we must first be informed

of his privity with and dominance over the corporation in whose name the infringements were committed.

To understand Cruikshank's connection with the Glass Machinery Company, and the extent of his participation in its unlawful acts, and thus to determine whether any relief may be had against him individually, it is necessary to consider the circumstances under which the Glass Machinery Company was incorporated and operated.

In the year 1910, Cruikshank organized the Glass Utilities Company under the corporation laws of Pennsylvania for the purpose of dealing in supplies and working for glass factories. Subsequently, its name was changed to Glass Machinery Company. It had a capital stock of $10,000, of which Cruikshank owned $9,200, the remainder being held by Mary E. T. Cruikshank, E. D. Scully and C. M. Clark, Cruikshank's lawyers, and Miss S. B. Aul, Cruikshank's clerk. On the organization of the corporation, Scully was elected President, Mrs. Cruikshank, Vice President, James W. Cruikshank, the defendant, Treasurer, and Miss Aul, Secretary. If not the main business, certainly a substantial part of the business of the corporation consisted in installing glass grinding apparatus under the Cruikshank patents for glass manufacturers. This part of the business of the Glass Machinery Company, according to the stipulation, yielded profits amounting to $11,948.31.

Cruikshank was paid a salary of $250.00 a month and certain sums for "time" and other items. Dividends were declared from the infringing profits and were paid to certain of the stockholders.

The business of the corporation, so far as the record discloses, was of that informal character which might be expected of a corporation in which one man held the preponderant majority of the capital stock and of a corporation whose business was to operate under and exploit that man's patented inventions. That this was the character of the corporation's business, that Cruikshank's relation to it was personal and his dominance over it complete, is shown by the fact that after infringment suits had been instituted against Cruikshank, the Glass Machinery Company, on February 5, 1917, held a special meeting of stockholders, at which only Cruikshank and Scully, his attorney, were present. The following significant resolution was proposed and adopted:

"The secretary made a report that due to patent litigation in regard to sand grading patents the funds of this company had been exhausted, and that the company had no assets and might be liable for damages for patent infringement. And was liable if it continued in business for taxes assessed by the Commonwealth of Pennsylvania.

"In view of these facts, James W. Cruikshank made a motion, that the charter of this company should be abandoned and that the secretary be authorized to make an affidavit to that effect to the Auditor General at Harrisburg, Pennsylvania.

"Motion duly seconded by C. D. Scully and passed."

We find that Cruikshank completely dictated and dominated the business acts of the Glass Machinery Company, including its infringing acts. Confessedly, the Glass Machinery Company made substantial profits by infringing the complainant's patents and distributed

a portion of them to Cruikshank in one way or another. These were infringing profits which accrued to the corporation as a result of the joint invasion of the complainant's property rights by Cruikshank and Glass Machinery Company. If Cruikshank had not inspired and brought about the infringements, the corporation would not have performed the infringing acts and would not have made the infringing profits. As he caused the corporation to commit the infringing acts and as he received, though indirectly, a part of the infringing profits, the fact that the profits first went to the corporation does not relieve him from liability for the portion thereof which the corporation turned over to him.

We are not here concerned with the liability of Glass Machinery Company to the complainant for the profits it received, because this company is not a party to this suit. We are concerned only with the liability of Cruikshank, who is a party. We hold that he is liable to account for such of the infringing profits as he actually received, by dividends, salary, "time," or in any other way, but that he is not liable for those profits which were received by the Glass Machinery Company and retained by it or by it distributed to others. Belknap v. Schild, 161 U. S. 10, 25, 16 Sup. Ct. 443, 40 L. Ed. 599; Clark Thread Co. v. William Clark Co., 55 N. J. Eq. 658, 37 Atl. 599.

[8] We do not base this ruling on the fact that Cruikshank received dividends as stockholder, or a salary as officer, or other compensation as employé of the corporation, in moneys derived from infringing profits. The receipt of such dividends, salary, or compensation by one innocent of the infringement presents a different question. We base the ruling on the fact that as an officer of the corporation he inspired, directed and brought about the infringements, and in doing so he committed a tort. For this tort, he is liable. The measure of his liability—in a suit in equity for profits as distinguished from an action at law for damages—is the profits of the infringement which he actually received. Elizabeth v. Pavement Co., 97 U. S. 126, 140, 24 L. Ed. 1000; Belknap v. Schild, 161 U. S. 10, 25, 26, 16 Sup. Ct. 443, 40 L. Ed. 599; Clark Thread Co. v. William Clark Co., 55 N. J. Eq. 658, 667, 37 Atl. 599; Prest-O-Lite Co. v. Bournonville, 260 Fed. 442 (D. C. N. J. 1916). As we are unable to determine from the record the precise amount of profits which Cruikshank received, and are, therefore, unable to direct a decree in favor of Hitchcock for a sum certain, we reverse so much of the decree against Cruikshank as is involved in Hitckcock's appeal with the direction to the District Court that it again refer the case to the master for additional testimony on this phase, if necessary, and for an accounting in accordance with this opinion.

The District Court imposed all costs of the trial below on the American Plate Glass Company to the exclusion of Cruikshank, its co-defendant. This constitutes one error assigned by that company in its appeal. We think there is substance in it.

This court, by its mandate on the appeal from the decree entered on the merits of this case, directed that the assessment of costs await the final decree.

We therefore, now direct that the District Court embody in its final decree an order for the payment of costs in substance as follows:

That all costs of the trial on the merits and of the appeal from the decree entered therein are taxed against the defendants, the joint infringers, in equal proportions, their liability therefor being joint and several; that all costs of the accounting in the District Court be taxed against the defendants in the proportion of nine-tenths against American Plate Glass Company and one-tenth against Cruikshank, their liability therefor being joint and several; that, as all parties appealed from the accounting decree and as no one wholly sustained his appeal, each party pay the costs of his appeal, dividing between them, however, the cost of printing the record, which the appellants used in common, in the proportion of two-fifths against Hitchcock, two-fifths against American Plate Glass Company, and one-fifth against Cruikshank, the liability of the defendants being joint and several. Nothing herein shall limit, alter, or affect any contract, agreement, or understanding between the defendants as to the liability of one to the other for the payment of costs.

The court directs that the decree below be affirmed, reversed, and modified in its several parts in accordance with this opinion.