## WESTINGHOUSE ELECTRIC & MFG. CO. v. CUTTING & WASHINGTON RADIO CORPORATION.

(District Court, S. D. New York. July 24, 1923.)

Patents ⊜⇒211(1)—License to "manufacture" and sell apparatus of licensee's manufacture requires licensee to make apparatus by its own employees.

Under license "to manufacture the apparatus and to sell the apparatus of licensee's manufacture," licensee cannot sell any other apparatus than what it "manufactures," which requires construction and assemblage of parts by licensee's own employees in its own factory, and does not authorize licensee merely to design work and have it done in factory of another company under supervision of its officer.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Manufacture.]

In Equity. Suit by the Westinghouse Electric & Manufacturing Company against the Cutting & Washington Radio Corporation. Decree for plaintiff.

Charles Neave and Stephen H. Philbin, both of New York City, for plaintiff.

William H. Davis, of New York City, for defendant.

LEARNED HAND, District Judge. I agree that when a man has a license to make or sell, and probably also if his license be to make *and* sell, it is a matter of no moment who does the manufacturing. But that is not this case. Here the license was "to manufacture the apparatus and to sell the apparatus of the licensee's manufacture." In the face of this, nobody argues that the licensee may sell any other apparatus than what he manufactures. It may be hard on him that he should not, if he has no factory, but he should have thought of that when he accepted his license.

On this branch the controversy therefore centers on the meaning of the word "manufacture." Normally, it ought to mean that the licensee should make the goods itself; that is, by its own employees. No doubt, the purpose was to insure its responsibility for the kind of work done. The mere sale of the goods would, of course, involve some responsibility; but clearly that was not enough. Armstrong wanted his licensee to do the work personally. It does not seem to me a compliance with this requirement that the licensee shall design the work even though he constantly have an officer at the factory of another company to supervise the manufacture. I can interpret the language only as meaning that the construction and assem-

blage of the parts should be done by the licensee's own employees and in its own factory. Anything else would be, I think, a casuistical interpretation to put upon words which are usual and clear. Whether Armstrong's purpose could have been reached by a broader interpretation is not relevant when the words are plain.

There remains the question of sale. Here, too, the purpose of the provision is plain enough; it was to retain in Armstrong the whole market except that of the three classes described in the third article of the contract. That purpose, it seems to me, was not concerned with the legal and formal incidents of the business. The parties were not interested in whether title, strictly speaking, first passed to jobbers and then to amateurs and the like. They were, however, interested, that is, Armstrong was interested, in preventing the machines from getting into the hands of other users. In other words, the licensee had no right to give an unconditional title to jobbers, if thereafter he could not control their disposition of the machines. How it did its selling was of no consequence so long as it kept this control over the machines till they reached the user. I do not quite see how it could keep such control and give an absolute title, for conditions on an absolute title are generally treated as repugnant; but that I conceive to be a difficulty which the licensee must work out, if he chooses to sell to jobbers outright. The contract means that in selling, the licensee shall retain legal power over the disposition of each machine until it reached the ultimate user. Any method of selling which insures that result seems to me within the purpose and fairly within the language of the license.

This is entirely in accord with the rulings of Judge Mayer and Judge Bodine, so far as I can see. In each case the De Forest Company was trying to avoid the contract by an obvious fetch, and there was no pretense that the machines were still subject to the control of the licensee after the sale. I agree with each of them, also, that the general custom of dealing in such goods, if there was any, as apparently there was not, would not affect this result. The language of the contract is unequivocal, certainly if it be given the scope which I have allowed it. If it be understood more narrowly, nothing is left for any custom.

The only new issue introduced into this case, which was absent in the other two, is the supposed estoppel, practical construction, or modification of the agreement from the conduct of the parties before the beginning

of this year. So far as this defendant is concerned, there was but one payment of royalties before October 1, 1921, and that a small one. The defendant had received notice by September 28th of Judge Mayer's language in which he announced that licensees, indeed this very licensee, might not sell a machine "to somebody who in turn might sell it to these three classes." I cannot agree that a single payment, even if made on the basis of a general right to sell to jobbers, is enough to modify the clear intent of the language actually used. What Armstrong may have done in the case of other licensees is not material in this case. Hence it seems to me that the plaintiff is right in its present position.

As to a preliminary injunction, I am disposed not to push the relief to an extremity. The defendant may have some time to adjust its business to the contract, considering the time that has elapsed. Different periods are proper for the two phases of the infringement. The defendant may have until September 1st to adopt some means of selling by which either it shall retain title to the machines until they reach the ultimate consumer; or, if any legal method can be devised, by which, though title pass, it shall control the disposition of each machine in the hands of the jobber, or other intermediate merchandiser, so as to insure its sale to one of the three classes prescribed within a reasonable period, or its return to the licensee.

As to manufacture, the defendant may have a period of six months within which to prepare itself to manufacture its product. During each of these periods, the defendant will be accountable for damages and profits upon all machines which it sells contrary to the conditions prescribed. It will remit bimonthly accounts of any such sold with the sales price and will give a bond for $10,000, with leave to the plaintiff to increase the same as the accounts may show it necessary.

As a condition of this injunction, the plaintiff will furnish a bond of $10,000.