**REYNOLDS SPRING CO. v. L. A. YOUNG INDUSTRIES, Inc.**

No. 7634.

Circuit Court of Appeals, Sixth Circuit.

Feb. 7, 1939.

258

Otto F. Barthel, of Detroit, Mich. (Barthel, Flanders & Barthel, of Detroit, Mich., on the brief), for appellant.

Otis A. Earl, of Kalamazoo, Mich.' (Chappell & Earl, of Kalamazoo, Mich., on the brief), for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a decree of the district court overruling exceptions to a Master's report in an action of accounting for infringement of letters patent No. 1,058,285 issued April 8, 1913, to L. A. Young for upholstering spring construction and assigned by him to the appellee, L. A. Young Industries, Inc.

The nature and value of the claims of the patent infringed are fully described in the former opinion of this court in an action between the same parties and reported in 6 Cir., 36 F.2d 150, and will not be repeated here.

The accounting period covers the years 1923, 1924, 1925 and 1926. The defendant made and sold to its customers during this period, 1,843,927 spring structures embodying the claims of the invention and received therefor $1,527,427.58.

It realized no profits from its venture but sustained a loss of approximately $250,000. The Master found that the appellant had made sales to the Ford Motor Company and the Chevrolet Motor Company of the device embodying appellee's invention which it otherwise would have made to these companies and as a direct result thereof appellee had been damaged in a large sum not determinable with accuracy.

He also found that the case was one for a reasonable royalty under Section 70, Title 35, United States Code, 35 U.S.C.A. § 70, and that five cents on each of the spring seat constructions made and sold by the appellant was reasonable. He found that the appellee was entitled to recover

$92,196.35 together with interest thereon in the sum of $28,152.70, a total of $120,349.05.

Prior to August 22, 1919, the appellee, L. A. Young Industries, Inc., was engaged in manufacturing spring seat constructions and parts thereof for automobiles, vehicles and the like, under numerous letters patent and licenses, among which was the patent here in question which appellee owned. On that date it licensed Ford under all of its patents and licenses then owned or subsequently acquired, to manufacture for its own use in automobiles and parts thereof, spring seat construction or parts thereof, and also as a part of the license granted to Ford the right to use in said manufacture appellee's shop methods, machines, tools, fixtures, jigs and patterns.

In consideration for said license Ford agreed to purchase from appellee a minimum of sixty percent of the total number of seat springs used in equipping its automobiles each year during the life of the agreement. If appellee was at any time incapacitated from furnishing seat springs as agreed, Ford was to do its own manufacturing during the period of incapacity, Young supplying the material up to the quantity then possessed or controlled by it, Ford to furnish the remainder. Ford cross-licensed the appellee to use any shop method, means, license or patents it owned or controlled for seat spring construction or any acquired during the life of the agreement.

The licenses and assignments were nontransferable and neither party was authorized to grant or permit others to use, make or sell said construction or parts or use said shop methods.

The parties mutually agreed to forever release each other from any claim or claims arising during the life of the contract for damages for infringement of any of the patents described in the agreement or others owned or later acquired or controlled by either of them.

The life of the agreement was for such time as Ford should use in the manufacture and sale of its automobiles, said type of seat spring construction, covered by the patents specified and those granted Young while the agreement was in force. If the Ford Company should discontinue the use of such seat construction, the agreement became null and void. It was provided, however, that either party could terminate

the agreement on twelve months' written notice.

Appellee was to be paid for each appliance manufactured by it and used by Ford in accordance with the schedule of prices attached and made a part of the agreement, subject to change with the fluctuation of the general market and by mutual agreement.

Appellee, beginning December 12, 1922, entered into a contract with the Chevrolet Motor Company wherein it agreed to sell and the Motor Company agreed to buy from it at a stated price per unit two-thirds of its requirements for seat spring construction for the period from January 1, 1923, to July 1, 1923. On April 6, 1923, it entered into a similar contract for fifty percent of its requirements. The next three contracts covered sixty percent of Chevrolet's requirements, each being for a six-month period, the last expiring July 1, 1925.

As a part of the sales agreement, appellee agreed to save harmless and protect the buyer, its successors and assigns, customers and users of its product against any claim or demand based upon infringement of any letters patent and defend at its expense any suits arising therefrom. Ford and Chevrolet obtained from appellee the requirements of their respective contracts and their remaining seat spring constructions from appellant, which were identical with those made and supplied by appellee.

The Special Master, in his findings included in the number of spring structures on which he awarded a reasonable royalty, those supplied by appellant to the Ford and Chevrolet Companies. Appellant excepted to this finding but the lower court affirmed and approved this as well as all other findings of the Master.

Appellant insists that it was an implied licensee insofar as it sold any devices embodying appellee's invention to the Ford and Chevrolet Companies. Appellee urges two procedural objections to this question being considered on this appeal, the first of which is that on the former trial in the district court it found that appellant was not an implied licensee and that error was assigned to that ruling on the former appeal to this court, and thus the law of the case was established.

An examination of the record shows that error was assigned to the ruling of the district court, but the opinion of this court shows that it was not considered on appeal.

It is a well-recognized rule that an appellate court on a second appeal may review and revise a conclusion reached on the first appeal, it becoming the law of the case only as to the lower court. Messinger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152; Lawrence-Williams Company v. Societe Enfants Gombault Et Cie, 6 Cir., 52 F.2d 774; United States v. Stevens, 8 Cir., 64 F.2d 853; Des Moines Terminal Company v. Des Moines Union Railway Company, 8 Cir., 52 F.2d 616. The second objection is that there is no pleading on behalf of appellant which would support evidence of an implied license.

The Bill of Complaint is the conventional one in patent cases. Appellant's answer is a general denial of infringement and the validity of the patent, with an affirmative plea that appellee was guilty of laches and that appellant was a licensee of appellee under a patent for spring seat construction, other than the one in suit.

In equity the proof must conform to the allegations, and the examination of the court is confined to the issues made by the pleadings. Providence Rubber Company v. Goodyear, 9 Wall. 788, 799, 804, 19 L.Ed. 566; Agawam Woolen Company v. Jordan, 7 Wall. 583, 610, 19 L.Ed. 177; Andrews v. Drake, 6 Cir., 83 F.2d 767; Lewis Teese et al. v. Huntingdon et al., 23 How. 2, 14, 16 L.Ed. 479; Ferguson Contracting Company v. Manhattan Trust Company, 6 Cir., 118 F. 791; Hitchcock v. American Plate Glass Company, 3 Cir., 259 F. 948; General Electric Company v. Continental Lamp Works, 2 Cir., 280 F. 846.

It follows from this that where a license, express or implied, is relied on as a matter of defense to a bill of equity for patent infringement, the answer must set up the express license or if implied, the facts upon which predicated, and if not specifically plead, the defendant cannot avail himself of it, though the facts relating to it may appear in evidence.

The contention of appellant that it was not required to affirmatively plead this defense because not affirmative, but a matter of mitigation of damages, is without merit. It claims an equitable interest in the patent and the proof shows that

practically all of the infringing devices on which the court awarded damages based on reasonable royalties were manufactured and sold by the appellant to the Ford and Chevrolet Companies. To permit it to go forward with such defense without a supporting pleading would lead to confusion and befog the issues the court must try and take the opposite party unaware. All reasonable means to simplify and narrow issues in controversy by the use of pleadings should be used. Such practice expedites the trial of cases and lessens the expense of litigation.

■ Appellant further contends that appellee waived the insufficiency of its pleadings by not objecting to the introduction of evidence on the agreements it had with Ford and Chevrolet. An examination of the record shows that these contracts were not referred to in evidence except by immaterial questions on cross-examination by appellant's counsel before the case was closed by the Master.

After the case was closed by both parties, the appellant for the first time argued before the Master its reliance on the implied licenses and thereupon appellee asked leave to reopen and introduce proof concerning its agreement with Ford and Chevrolet because of appellant's argument, which was done over the objection of appellant. This did not constitute a waiver. Duffin v. Lucas, 6 Cir., 55 F.2d 786.

■ If proper issue had been joined, we are of the opinion that no implied contract of license arose from the circumstances under which appellee contracted with Ford or Chevrolet. The Ford contract recites that it was "desirous of making for its own use exclusively in the equipment of automobiles, parts and the like of its own manufacture" the constructions covered by appellee's patent, "to manufacture for its own use in automobiles, parts therefor and the like made by" such licensee "but for no other purpose," the said patented structures, and providing that such license was "non-transferable" and did "not authorize" the licensee "to license or grant or permit others to use, make or sell the said constructions."

There is no ambiguity in this agreement and nothing can be spelled out of it or impliedly inserted in it authorizing Ford to transfer to another its right to manufacture under the patent without the consent of appellee. The express language of the contract limits the license to Ford.

The agreement with Chevrolet was simply a buying order. No authority was given it to manufacture the devices on its own account. Appellant lays great stress on the fact that the two automobile manufacturers were desirous of establishing more than one source of supply due to labor difficulties, and that appellee knew this and when it agreed to a minimum number to be furnished by it to these companies it impliedly agreed that its device could be obtained and used by them for this purpose. In other words, its contention is that appellee dedicated the patent to the public beyond its minimum sales to Ford and Chevrolet for their use. This contention finds no support in either business custom or reason.

As was said in Providence Rubber Company v. Goodyear, supra, 9 Wall. 793, "there are always those who are ready to gather where they have not sown." A second source of supply could have been acquired by Ford and Chevrolet through licensees of appellee which the evidence shows it was willing to grant.

■ The agreement of appellee with Ford and its purchase order from Chevrolet are free from latent or patent ambiguities. It therefore follows that the court is without authority to construe either of them to impliedly license appellant to make use of appellee's patent, nor did appellee by its conduct grant to appellant implied licenses. Providence Rubber Company v. Goodyear, supra; Radio-Craft Company, Inc., v. Westinghouse Electric & Mfg. Company, 3 Cir., 7 F.2d 432; Westinghouse Electric & Mfg. Company v. Tri-City Radio Electric Supply Co., 8 Cir., 23 F.2d 628; Standard Sanitary Mfg. Co. v. Arrott, 3 Cir., 135 F. 750; Westinghouse Electric & Mfg. Co. v. Cutting & Washington Radio Corporation, D.C., 5 F.2d 1004.

Appellant, while conceding that the award to appellee should be measured by reasonable royalties, insists that the sum allowed is excessive and also assigns error to what it claims was the failure of the lower court to give due consideration to the evidence in the case of the practical utility of appellee's device as described in its patent, compared with changes made in it before being put to commercial use. It also assigns error to what it claims was

an omission by the Master, to deduct from the value of appellee's invention, other inventions to which it was not entitled to compensation and which were a part of and contributed to the use of appellee's infringed device.

■ Evidence is in the record on all of these questions and none of it tendered by the appellant was rejected by the Master and presumably all of it was weighed by him in reaching his conclusion. He fixed the rate of royalty not on the patented article but on the seat spring construction as a whole. Appellant urged the same matters before the District Judge on exceptions to the Master's report which were again considered and weighed. Appellant assigns errors separately but all resolve into a single issue.

■ The findings of a Master when affirmed by the district court are presumptively correct and will not be set aside unless clearly erroneous. Camden v. Stuart, 144 U.S. 104, 119, 12 S.Ct. 585, 36 L.Ed. 363.

■ In fixing damages on a reasonable royalty basis against an infringer, the sum allowed should be reasonable and that which would be accepted by a prudent licensee who wished to obtain a license but was not so compelled and a prudent patentee who wished to grant a license, but was not so compelled. In other words, the sum allowed should be that amount which a person desiring to manufacture and sell a patented article at a reasonable profit would be willing to pay. Horvath v. McCord Radiator & Mfg. Co., 6 Cir., 100 F.2d 326.

■ Property loss of a patentee from infringement arises from such varying facts and circumstances that each case must be controlled by those peculiar to it and except in rare instances the loss can only be determined by reasonable approximation. Clark v. Schieble Toy & Novelty Company, 6 Cir., 248 F. 276.

■ Appellant knowingly copied appellee's device, which had been in commercial use long before it began its simulation. This was a violent commencement and under such circumstances the court need not exercise meticulous care to avoid hardship on appellant.

Appellee's patent covers a cushion base frame to be used in the manufacture of automobile cushion seats, with an inwardly opening curve for attaching the cushion cover or upholstering. A cross-section of the frame has the shape of the letter "S" to which the springs are affixed by clamping together the flanges of the inner groove, while the cushion covering is readily attached by closing or pinching together the flanges of the outer groove. The frame can be manufactured and bent into any desired shape, including corners, without destroying the effectiveness of these grooves for receiving the springs and covering of the cushion.

The evidence shows conclusively that the springs and covering can be attached much more readily and economically than in other structures; that the covering is evenly and firmly held in place without strain or tearing as compared to tacking or other methods known to the previous art, and the flange which is pressed up to hold it in place is protected from wear against the sides and bottom of the car.

Young was the first to conceive the idea of using a bead upon the edge of the cover and of confining this within the outer groove of the "S" frame and the adjacent springs within the inner groove by merely compressing the flanges, the cover thus being held by the narrowed opening rather than by surface friction. The extent of appellee's business and the success of this upholstery spring seat construction and its widespread and well-nigh universal use also clearly appear from the record.

On October 29, 1924, appellee made a license contract covering the patent in question with Jenks & Muir, spring cushion manufacturers of Detroit, Michigan, on a royalty basis of fifteen cents a set or 7½ cents an article and another at five cents a set or 2½ cents an article. The variation in royalty rate was due to the size of the set, the lower rate being applicable to cars the type of Ford and Chevrolet.

The license agreements do not support the sum fixed by the Special Master as royalty but that is not the only evidence to be weighed in arriving at the sum allowable. Appellee had made a very substantial profit out of the manufacture of the device covered by the patent.

Appellant made all of its sales to customers of appellee and its competition was prosecuted with great vigor and at ruinous

prices. It sustained a loss of $256,760.-72 in the operation of its infringing business. By its conduct it caused appellee to sell at a lower price and deprived it of profitable sales or royalties.

It is impossible to measure appellee's lost profits or royalties with reasonable accuracy, due to the fault of appellant and it is in no position to complain of the determination by approximation of appellee's losses because of its infringement.

The finding of the Master that a reasonable royalty was five cents on each seat spring construction made and sold by appellant is adequately supported by the evidence. W. S. Godwin Company v. International Steel Tie Company, 6 Cir., 29 F.2d 476; B. F. Goodrich Company v. Consolidated Rubber Tire Company, 7 Cir., 251 F. 617; United States Frumentum Company v. Lauhoff, 6 Cir., 216 F. 610.

The Master awarded interest to appellee from the date of appellant's last infringement and was sustained by the district court.

The decree of the district court was entered before the decision of the Supreme Court in Duplate Corporation v. Triplex Safety Glass Company, 298 U.S. 448, 460, 56 S.Ct. 792, 80 L.Ed. 1274; General Motors Corp. v. Dailey, 6 Cir., 93 F.2d 938, 942. Applying here the rule approved in that case, which is applicable to the facts, interest on the award should be calculated at the rate of five percent from February 8, 1933, until paid.

Appellee has filed no cross-appeal, but nevertheless insists that we should increase the damages on the ground that the infringement of appellant was wilful. It is well established that a party who does not appeal from a final decree of the trial court cannot be heard in opposition thereto on the appeal of the adverse party. In other words, appellee may not attack the decree with a view to enlarging his own rights thereunder. United States v. American Railway Express Company, 265 U.S. 425, 44 'S.Ct. 560, 68 L.Ed. 1087; Morley Construction Company v. Maryland Casualty Company, 300 U.S. 185, 193, 57 S.Ct. 325, 81 L.Ed. 593; Helvering v. Pfeiffer, 302 U.S. 247, 253, 58 S.Ct. 159, 82 L.Ed. 231.

The decree of the district court is modified in accordance with this opinion and, as modified, is affirmed.