**UNITED STATES v. HARTFORD-EMPIRE CO. et al.**

Civil Action No. 4426.

District Court, N. D. Ohio, W. D.

April 3, 1946.

Wendell Berge, Asst. Atty. Gen., and Lawrence S. Apsey, Sp. Asst. to Atty. Gen., for plaintiff.

Marshall, Melhorn, Wall & Bloch and Stuart S. Wall, all of Toledo, Ohio, and Cahill, Gordon, Zachry & Reindel and John T. Cahill, all of New York City, for defendant Hartford-Empire Co.

Green & McCallister and E. W. McCallister, all of Pittsburgh, Pa., and Owen & Owen and Carl F. Schaffer, all of Toledo, Ohio, for defendant Ball Brothers Co.

Doyle & Lewis and Lehr Fess, all of Toledo, Ohio, for defendant Lynch Corporation.

Robert T. Swaine, of New York City, and Lloyd T. Williams, of Toledo, Ohio, for defendant Owens-Illinois Glass Co.

Stephen H. Philbin, of New York City, and Joseph D. Stecher, of Toledo, Ohio, for defendant Hazel-Atlas Glass Co.

KLOEB, District Judge.

In the opinion of this Court, filed in this case on August 25, 1942, we find, in 46 F. Supp. at page 553, the following:

"These documents indisputably make a case that sustains the Government's contention that the defendants have violated and are now violating Sections 1 and 2 of the Sherman Act [15 U.S.C.A. §§ 1, 2] and, in the case of Hartford and Lynch, Section 3 of the Clayton Act [15 U.S.C.A. § 14], 'by unlawfully conspiring, monopolizing, attempting to monopolize, and by unlawfully contracting, combining, and conspiring to restrain interstate and foreign trade and commerce, and more particularly by acquiring and maintaining monopolies of * * * (b) the manufacture and distribution of glass-making machinery, * * *.' "

On page 617 of 46 F.Supp. the Court states:

"* * * there has been an illegal combination resulting in an unreasonable restraint of trade in the glass container industry through the control of machinery used in the manufacture of glass; * * *."

Appropriate Findings of Fact and Conclusions of Law were filed on August 27, 1942.

Thereafter, the Supreme Court, in its opinion of January 8, 1945, 323 U.S. 386, 65 S.Ct. 373, 381, said the following:

"The district court found * * * that competition in the manufacture and sale or licensing of such machinery had been suppressed, * * *. The findings are full and adequate and are supported by evidence, much of it contemporary writings of corporate defendants or their officers and agents. * * * We affirm the District Court's findings and conclusions that the corporate appellants combined in violation of the Sherman Act, * * *."

In the supplemental or clarification opinion rendered by the Supreme Court on April 2, 1945, 324 U.S. 570, 65 S.Ct. 815, 818, we find the following:

"Hartford should of course be compelled to lease machinery covered by its patents according to its past practice, on reasonable terms, and should be required to license the patents involved for manufacture and use or sale, also on reasonable terms. * * *."

Also:

"The Government suggests that the opinion should be clarified to permit independent machinery manufacturers to obtain licenses. The opinion is so modified, and the corporate defendants are required to license all applicants to make, use, or sell the patented machines at reasonable royalties. * * *."

Also:

"Hartford should also be required to license the patents for manufacture for use or sale, but with the limitation that similar licenses at uniform reasonable royalties must be available to all who desire them."

On April 12, 1945, the Supreme Court issued its Mandate remanding the case to this Court for further proceedings in accordance with its opinions.

Thereafter, and in due course, suggestions of the parties as to judgment after Mandate were filed with this Court, and in Section 13 (C) thereof the Government took a position as follows on the question of reasonable royalties for the manufacture and sale of glass making machinery:

"The reasonable royalty for the privilege to make, have made, and sell feeders, forming machines, suction machines, lehrs, or

stackers shall not be determined upon the basis of royalties which the licensor might receive for the use of the machine over its normal life if such machine were leased by the licensor (although the Court may consider the foregoing among other factors), but where machines of a particular class sold by a licensee are also leased by the licensor at charges determined to be reasonable herein, such reasonable royalty shall be fixed at some figure which will permit continuous competition between the lessor in leasing such machines and an efficient independent manufacturer in selling them. Where machines of a particular class sold by a licensee are not leased by the licensor, such royalty shall be fixed at some figure calculated to permit the sale of such machines by an efficient, independent distributor thereof in a competitive market. Royalties so determined shall be subject to revision upon application to this Court by the licensor or any licensee from time to time upon a showing that existing rates are ineffective to permit such continuous competition. The defendants named in this paragraph are hereby perpetually enjoined from requiring any purchaser of any such machine from one licensed to sell it, to pay royalties to such defendant for such use and from receiving any such royalties."

In a footnote to paragraph (C), the defendants state their position, as follows:

"The defendants contend (with the exception of Ball Brothers Company, which expresses no opinion) that this subparagraph should be deleted and the following substituted therefor: 'The royalties charged pursuant to this paragraph 13 shall be reasonable under all the circumstances.' "

In due course plaintiff and the defendants filed their written arguments in support of their respective contentions, and these written arguments were supplemented with oral argument on October 22, 1945.

The defendant's position, based upon its contention that the royalties charged pursuant to Paragraph 13 shall be reasonable under all the circumstances, is concisely set forth on page 6 of its written memorandum, which reads as follows:

"Machine Manufacturers: Under the Committee's program the manufacture of machinery is available to all on equal terms.

"Hartford, as in the past, will obtain patented machines from outside machine shops and lease them to lessees. It will charge its lessees, as an initial license fee, the cost of these machines plus the manufacturer's profit

"Independent machinery manufacturers, under the Committee's program, will manufacture patented machines without payment of royalty to Hartford. They will similarly charge their purchasers, as a sales price, the cost of these machines plus the manufacturer's profit.

"Result: Hartford and the independent machinery manufacturers will compete on a plane of absolute equality—and the competitor that produces the best machine at the lowest cost will take the business.

"Container Manufacturers: Under the Committee's program the manufacture of glass containers is available to all on equal terms.

"Lessees from Hartford, as in the past, will use patented machines and will pay current, periodic royalties to Hartford for their use of the Hartford patents utilized with those machines.

"Purchasers from independent machinery manufacturers, under the Committee's program, will use purchased patented machines and will similarly pay current, periodic royalties to Hartford for their use of the Hartford patents utilized with those machines.

"Result: Lessees and purchasers will compete on a plane of absolute equality— and the competitor that produces the best ware at the lowest cost will take the business."

The reference to a Committee program in the above quotation from the defendant's memorandum means the Committee representing non-defendant glass manufacturing companies that entered into an agreement with the Hartford Company embodying the payment of use royalties for the operation of machinery leased from the Hartford Company during a succeeding five year period. This agreement is contained in an intervening complaint filed herein by Anchor Hocking Glass Corporation et al., on October 5, 1945.

Thereafter, on October 31, 1945, final judgment was entered, with Section 13 (C) reading as follows:

"(C) The basis for establishing the reasonable royalty for the privilege to make,

have made and sell feeders, forming machines, suction machines, lehrs or stackers shall be determined by this Court, by amendment of this subparagraph (C), with-in thirty (30) days after the entry of this judgment. * * *"

█ Following the entry of this final judgment, the amendment of subparagraph (C) was postponed by appropriate entries from time to time in order to allow the parties an opportunity to reconcile their divergent views and later, upon their failure to reach an agreement, to afford the Court an opportunity to study various new proposals that were filed by the parties. In their final analysis, the proposals on paragraph 13 (C) made by the defendant Hartford-Empire Company did not differ substantially from the position that it had originally taken, i.e., that the purchasers of machinery manufactured and sold by licensees of Hartford should pay a use royalty comparable to the use royalty fees paid by the licensees of machinery for use. The position of the defendant Hartford is that where the Supreme Court says "Hartford should of course be compelled to lease machinery covered by its patents according to its past practice, on reasonable terms, and should be required to license the patents involved for manufacture and use or sale, also on reasonable terms," it means, from Hartford's point of view, that the reasonable terms to be exacted from the licensee to manufacture and sell and from the lessee of machinery to use, shall be uniform.

· In the opinion of this Court, if the same royalties were charged to license inventions as are charged to lease machinery, then no inventions would be licensed, for there would be no applicants for licenses. The Mandate of the Supreme Court to instil competition into the manufacture of machinery would thereby be frustrated.

The reasonable royalty charged for the privilege to make, have made and sell machinery cannot, therefore, be determined upon the basis of royalties which the licensor might receive for the use of the machine over its normal life if such machine were leased by the lessor, but such reasonable royalty must be fixed at a figure that will establish active and continuous competition between the lessor in leasing such machines and an efficient independent manufacturer in selling them, keeping in mind always that the licensor is entitled

to receive reasonable compensation in return for the use of his inventions.

█ It appears to this Court that, when the Supreme Court said the following: "Hartford should of course be compelled to lease machinery covered by its patents according to its past practice, on reasonable terms, * * *," it meant just that, and that it thereby established a class of manufacturers who might lease the machinery of Hartford on reasonable and uniform terms. When the Supreme Court added "and should be required to license the patents involved for manufacture and use or sale, also on reasonable terms" the Supreme Court meant to establish a second distinct class of users who, in turn, may be charged reasonable and uniform rates. If the Supreme Court had meant that uniform rates were to be exacted from each of these two classes of manufacturers, it would have said so, and had it said so there would have been no necessity for the incorporation of the following in the clarification opinion: "The Government suggests that the opinion should be clarified to permit independent machinery manufacturers to obtain licenses. The opinion is so modified, and the corporate defendants are required to license all applicants to make, use, or sell the patented machines at reasonable royalties."

█ Until the Supreme Court says, in unmistakable terms, that it does not desire to instil competition into the manufacture, sale and distribution of glass making machinery, this Court must assume that the Higher Court does desire competition in the industry and does desire that the illegal combination, resulting in an unreasonable restraint of trade in the glass container industry through the control of machinery used in the manufacture of glass, be dissolved. Perhaps the Higher Court did not fully appreciate the extent of the problem that it was referring to this Court to solve when it ordered that Hartford should be required to license the patents involved for manufacture, use or sale on reasonable terms. What are reasonable terms in a given industry for a license to manufacture and sell certain inventions cannot be arrived at through mathematical formula, nor should they be arrived at through arbitrary judgment or mere guess work. The parties involved herein have attempted to arrive at a definition of "reasonable terms" and they have failed. The Court

has no criteria to govern him in arriving at a definition of "reasonable terms" in this particular industry and for this kind and class of machinery. By the terms of the Supreme Court opinion, the Hartford Company is required to license glassware manufacturers to use and machinery manufacturers to make and sell its patented inventions. The royalties charged manufacturers to use can be taken into consideration in arriving at the license fee to be paid by machinery manufacturers to make and sell, but they ought not to govern the establishment of reasonable terms for a license to make and sell. There is nothing to prevent the Hartford Company from continuing its established policy of leasing its machinery on a use royalty basis if it so desires, but certainly there is an injunction coming from the Supreme Court to the Hartford Company to license its patents on reasonable terms to all applicants who may desire to manufacture and sell this same machinery. This means, of course, the establishment of competition between the two methods of distributing machinery. The Court is then confronted with the problem of instilling competition into the business of manufacturing, selling and distributing glass making machinery, and at the same time allowing the patentee reasonable compensation for the licensing thereof. If the license fee charged for the privilege of making, selling and distributing machinery is too large, then there will be no competition from this field. If the license fee is too small, there will follow some exceedingly active competition at the expense perhaps of failing to award to the patentee his reasonable compensation, and at the same time of destroying his system of licensing for use.

In the case of Austin-Western Road Machinery Co. v. Disc Grader & Plow Co., 8 Cir., 291 F. 301, at page 304, we find the following:

"Where general damages by way of a reasonable royalty are allowed there is no mathematical formula for their determination. The purpose in view in any particular case is to determine what amount a person desiring to manufacture and sell the patented article would, as a business proposition, be willing to pay as a royalty; that is, what amount could he fairly pay as a royalty and be able to make and sell in the market the patented article at a reasonable profit to himself. Since no established royalty exists, the master and the trial court, for the purpose of determining a reasonable royalty, must resort to and rely upon other evidence. Such evidence would be directed to the character of the invention, costs of manufacture, costs of marketing, sales prices, demand, etc. Royalties paid in more or less similar situations would be considered, although the weight of such evidence in any particular case might be slight."

In the case of Reynolds Spring Co. v. L. A. Young Industries, Inc., 6 Cir., 101 F. 2d 257, at page 261, we find the following:

"In fixing damages on a reasonable royalty basis against an infringer, the sum allowed should be reasonable and that which would be accepted by a prudent licensee who wished to obtain a license but was not so compelled and a prudent patentee who wished to grant a license, but was not so compelled. In other words, the sum allowed should be that amount which a person desiring to manufacture and sell a patented article at a reasonable profit would be willing to pay. Horvath v. McCord Radiator & Mfg. Co., 6 Cir., 100 F.2d 326."

■ It occurs to me that the Court might apply the rules thus laid down and impose a royalty based upon a percentage of the sales price in conformity with the Government's alternative (C), as amended, which would read as follows:

"(C) (1) The reasonable royalty initially to be charged by defendants for the privilege to make, have made, and sell each feeder, forming machine, suction machine, lehr, or stacker shall, as to each defendant, be a fixed percentage of the price at which such machine is sold. When the number of machines of each such classification sold under licenses issued by any such defendant for the privilege of making and selling the same shall total 35 per cent of the sum of all such machines so sold and all such machines outstanding pursuant to leases or sales made by such respective defendant, the reasonable royalty thereafter payable for the privilege to make, have made, and sell such class of machines shall, upon application by such licensor, by any licensee under such a license, by any applicant therefor, or by the plaintiff, be determined by the Court at a figure which will permit continuous competition between the lessor in leasing such machines and an efficient distributor in selling them, or, if the licensor does not also lease machines, then at a figure which will permit the sale of

such machines at a reasonable profit by an efficient distributor thereof in a competitive market.

"(2) If the licensor and licensee cannot agree as to the reasonable royalty for the privilege to make, have made, and sell obtained by any applicant under subparagraph (A) (2) hereof, either party may apply to the Court for determination of such reasonable royalty.

"(3) The defendants named in this paragraph are hereby perpetually enjoined from requiring any purchaser of any such feeder, forming machine, suction machine, lehr, or stacker from one licensed to sell it to pay royalties to such defendant for the use of such machine and from receiving any such royalties."

The parties herein, during the next ten days, should make an effort to agree on the reasonable royalty initially to be charged. If, after the expiration of ten days, they have failed to agree, then the Court will refer this question to a Special Master to take testimony and report to the Court his conclusions, grounded on such a factual basis, as to what such reasonable royalties shall be. By so proceeding, we shall establish a basis from which we can operate. If, after the lapse of reasonable time, it should appear that the royalty initially to be charged has been set too high and that, as a result, the business of manufacturing and selling machinery has not progressed, then the situation may be re-appraised. Time, patience, and a reasonable application of common sense and diligent effort should solve this difficult problem.